ROBERT J. DOOM AND HANS P. LAU, PLAINTIFFS IN ER-
ROR, v. A. L. A. WALKER, DEFENDANT IN ERROR.

**Verdict.** When, under the provisions of section 293 of the code of
civil procedure, the court shall have instructed the jury that if
they render a general verdict to find upon particular questions
of fact stating the same in writing, and directing a written find-
ing thereon, the jury shall fail to agree to a finding upon the
whole or a part of such questions, but shall find a general ver-
dict, it is error on the part of said court—over the objection of
the defendant, against whom is the said general verdict, to re-
ceive such verdict, and judgment thereon will be reversed.

ERROR to the district court for Saunders county. Tried
below before GEORGE W. POST, J.

*Harwood & Ames* and *Burr & Kelly,* for plaintiffs in
error.

*M. H. Sessions,* for defendant in error.

COBB, J.

There is a question of practice raised in this case which
has not been previously presented to this court. This
question may be stated as follows: When, under the pro-
visions of section 293 of the code of civil procedure, the
court may instruct the jury, if they render a general ver-
dict to find upon particular questions of fact, stating the
same in writing, and directing a written finding thereon,
the jury shall fail to agree to a finding upon the whole or
a part of such questions, but shall find a general verdict, is
it error on the part of said court, over the objection of the
defendant, against whom is the said general finding, to re-
ceive such verdict, enter judgment thereon, and discharge
the jury?

A statement of the case somewhat at length is necessary
to the proper application of the above question. The ac-

tion was in the nature of trespass for entering the store of the plaintiff and taking away and converting his goods. The defense of the defendants, one of whom is a constable was: 1, a general denial; 2, a justification under a writ of attachment, then in the hands of the defendant, Robert J. Doom, as constable of said county, issued by a justice of the peace, at the suit of the defendant, Hans P. Lau and partner, and against one W. E. Edwards; and 3, that the said goods were the property of the said Edwards, and not of the plaintiff, etc.

Upon the trial the controversy was almost exclusively confined to the question, as to whether there was a perfected purchase by the plaintiff Walker from W. E. Edwards of the goods in question, before the levy of the attachment, or not. According to the testimony of Walker —plaintiff below, who was a witness on his own behalf, on Wednesday, October 12, 1881, W. E. Edwards was the owner of and in possession of the goods which constituted the furniture and supplies of his restaurant, which he was engaged in keeping in the house in which he also lived with his wife and four children at Ashland. I quote at some length his testimony.

"In the first place I asked him if he wanted to sell, and he said he did. And I told him what I was doing, and I asked him in the first place, how he would sell. And he said he would sell and take an inventory; and then I told him that he had some goods in there that I did not want, as I could not pay for them. And that I did not want to go in debt too heavy. These consisted of heavy groceries, he had in there, and we agreed that I was to give him $350 cash and a mortgage on the fixtures in the house, and also on a mower and hay rake that I had in Cass county, that I had before I came here, and it was to be completed in that way if I could get the building. If I could not get the building he was not to sell, and I was to go out and see Mrs. Lyman, I went out and saw her and she was to tell

me on Thursday, whether I could get the building or not, but she did not send me in word and on Friday morning I went out to see her, and she told me I could have the building, by him paying up the remainder of the rent that was due on the building for that month up to November first, and then if I would deposit the $22 in the bank for November, I could have the building as long as I kept the rent paid up in advance. And then I came in and told Mr. Edwards so, and said he, ' All right,' and then he said, ' I have not got the money by me to go and pay up the rent,' and I said, ' All right I will hand it to you,' and I handed him $10. I handed it to him in Scott's. Scott receipted it and I handed him back the remainder, something like between $7 and $8—$10—I don't remember exactly, but he handed me some change back."

Q. State what was agreed upon at that time, if anything, about the time that the invoice should be made, and who was to make it?

A. We selected the parties. He chose Luther Snell, and I took George Patton. At that time and then we took an invoice of those goods on Monday, and I was to take possession, and I was to have one room vacated so I could move in.

Q. State what was said and done?

A. We were to take the invoice on Monday, and I was to have possession so as to move right in.

Q. Give the language of what was said. What was said by you and the other party?

A. He said, ' All right, we will take an invoice of the goods on Monday.' I came to town Monday morning and he was not there, but the building was vacated. That is, one room for my family. On Monday morning I came in, in person on Monday morning, and my family came in on Tuesday.

Q. Where did your family go?

A. They went into the building.

Doom v. Walker.

Q. On what day did you take possession?

A. On the 18th, in the front room up stairs, we moved in.

Q. State what further was done?   (No answer.)

Q. State if the invoice was made that day?

A. No, sir, it was not.

Q. When was it made?

A. On the 22d of October.

Q. Was Edwards a married man?

A. I should judge he was.   I don't know, I suppose he was though.

Q. Did he have a wife there in the building?

A. Yes, sir, and four children.

Q. Where was the wife at the time?

A. She was in the building.

Q. Where was she living with her family?

A. At the time the invoice was taken, or before?

Q. Yes, and all this time?

A. In the house.

Q. In the same building?

A. Yes, sir.

Q. Now state what was done on the 22d, and who did it?

A. We took an invoice of the stock.

Q. Who did?

A. Luther Snell, George Patton, and myself.

Q. Where was Mrs. Edwards?

A. She was up stairs.

Q. Well, what did she do about it?

Defendant objects as immaterial.   Sustained.

Q. Was she not there in possession, and running the business of the restaurant?

A. Yes, sir.

Q. State whether she was running that restaurant?

Defendant objects as immaterial.   Overruled.

A. Mrs. Edwards was running the restaurant at that time?

Q. I am calling your attention particularly to the 17th, and down to the 22d, when the inventory was made, whether she was running that restaurant?

A. Yes, sir, she was.

Q. What was done on the 22d, and who did it?

Defendant objects as immaterial and irrelevant. Sustained.

Q. I want to know, first if on the 22d, that arrangement that you had made with Mr. Edwards was perfected and carried out according to the terms and the agreement of the same.

Defendant objects as leading and irrelevant. Sustained.

Q. State what was done under that contract?

A. It was carried out to the letter.

Defendant objects as incompetent. Sustained.

Q. State what was done?

A. The invoice was taken and the money was paid over.

Q. Who took it?

A. Luther Snell, George Patton, and myself.

Q. Well, what did Mrs. Edwards do about it?

Defendant objects as immaterial. Sustained.

Q. State if you know whether Mrs. Edwards knew what the contract was between you and Mr. Edwards?

A. Yes, sir.

Defendant objects as hearsay and incompetent, and moves the court to strike out the answer. Overruled and defendant excepts.

Q. Now go on and state who was present at that time, and who acted for Mr. Edwards, if anybody, in making that invoice?

Defendant objects as incompetent. Sustained.

Q. State whether you deposited $22 in the bank for the November rent?

A. I did.

Q. State what was done there that night in making the invoice?

A.   We simply took the invoice, and I paid over my money according to the contract entered into between Mr. Edwards and myself. .

Q.   State how much goods you invoiced and how much you invoiced them at?

Defendant objects as immaterial and irrelevant.   Overruled and defendant excepts.

A.   I purchased $676.10 worth, if I remember right, and I think I paid $350 cash. ·

Q.   When did you pay that.

A.   Saturday night.

Q.   Who did you pay it to?

A.   To Mrs. Edwards.

The testimony of this party as a witness continues at considerable length, but the only new facts elicited deemed important for the purposes of this opinion are, that in addition to the payment of $350, as testified to above, he also executed and delivered to Mrs. Hattie E. Edwards, Mr. Edwards' wife, a note at six months from that date for the sum of $325, and also a chattel mortgage to secure the payment of the same on the fixtures in the building and some farm implements of plaintiff's in Cass county.

Also that he, plaintiff below, took possession of the goods Saturday night, the twenty-second of October, and was in possession of them on Monday morning, the 24th, when the defendant, Doom, the constable, took them on the attachment in favor of Lau & Co.

The deposition of Mrs. Harriet E. Edwards, taken on the part of defendants, was read in evidence on their behalf. Her testimony in the main corroborates that of the plaintiff in reference to the understanding between Walker and Edwards previous to the latter going away, the taking of the invoice, the payment of the $350, and the giving of the note and mortgage to her.   Also that her husband left Ashland the morning of the seventeenth of October, 1881, that he did not bid her good-by when he left, that she did

not know where he was going, and that at the time of the taking of the invoice and payment of the money to her by Walker she thought that Edwards, her husband, had finally abandoned his family or had been killed. Also that he had never authorized her to consummate the sale of said goods to Walker, that she did not know whether Walker was aware of that fact or not. But in answer to the question whether there was not a conversation between herself and Walker to that effect, she answered, "I don't know but there was such a conversation." She further stated that at the time that Edwards left Ashland he was the owner of the goods in question.

Witness further stated that after Edwards left Ashland it was about four weeks before she heard from him, at which time he came to Augusta, Ills., where witness then was.

The deposition of William E. Edwards, taken on the part of defendants, was also read in evidence in their behalf. This witness also in the main corroborates the testimony of Walker as to the preliminaries of the agreement to sell the property by him to Walker, the obtaining by Walker of the agreement to rent him the house by the Lymans, and the payment by Walker of the amount of arrears of rent for a part of the month of October; but that he left Ashland on the morning of October without consummating the sale; that he never consummated it or delivered the goods to Walker; that he never authorized Mrs. Edwards or any one else to consummate the sale nor to sell the goods, except to his clerk to sell at retail in the usual course of business; that when he left Ashland, October 17, 1881, he was the owner of and in the possession of the goods. He also testified that when he left it was not with the intention of abandoning his family; that he told two persons, whom he names, on that morning that he was going to Omaha, and return that evening; that he was absent from Ashland four weeks less one day; that when he re-

turned he found that his wife and children had gone and had sold the property; that his wife had sold it; that he remained at Ashland but a few hours, and went to Illinois, where he found his wife at her sister's; that since then he and his wife had lived together in Illinois, and also in Missouri; and that he had never ratified or consented to the sale of the said goods.

There was other testimony, but which it is not deemed important to notice, on this point.

After delivering its charge to the jury, the court delivered and submitted to them for their special finding the following questions: .

1.   "Did W. E. Edwards, late of this county, whose deposition has been read herein, on or before the twenty-fourth day of October, 1881, or at any other time, personally deliver to the plaintiff, Walker, the goods and chattels in controve.sy, or any of them?"

To which the said jury answered, "No."

2.   "Did the said W. E. Edwards, at any time on or previous to said twenty-fourth day of October, 1881, in any way instruct or direct his wife or give her his consent or permission to sell or deliver the goods and chattels in controversy, or any of them, to the plaintiff Walker?"

To which the jury answered, "Fail to agree."

3.   "Did the said W. E. Edwards, at any time before meeting his wife in Illinois, in November, 1881, consent to or acquiesce in a sale or delivery by her to said Walker of the goods and chattels in controversy, or any of them?"

To which the jury answered, "Yes."

4.   "Did the plaintiff Walker, at any time, pay or give to said W. E. Edwards, personally, any money, note, or valuable thing as or for the whole or any part of the purchase price of the goods and chattels in controversy, or any part thereof?   If so, when and how much?"

To which the jury answered, "Failed to agree."

5.   "Did the said W. E. Edwards, at any time before

the twenty-fourth day of October, 1881, in any way direct or instruct his wife or give her his consent or permission to consummate or close up a sale or delivery of the goods and chattels in controversy to the plaintiff Walker previously negotiated between said Edwards and said Walker?"

To which the jury answered, "Failed to agree."

At the same time the said jury brought in a general verdict in favor of the plaintiff for the sum of three hundred and ninety-four dollars and ninety cents. Whereupon the defendants, by their counsel, objected there in open court to the reception or recording of said general verdict herein, on the ground that said jury had failed to make, render, or return any verdict or findings in response to the special questions or findings submitted to them by the court, numbered respectively two, four, and five, or either of them. Which objection the court then and there overruled, and received the said general verdict and ordered the same to be made of record, and discharged said jury from the further consideration of said cause. To each of which said rulings and orders the said defendants then and there excepted. Thereupon the said defendants filed their motion for a new trial, which was overruled, exception taken by the said defendants, and judgment rendered on the verdict.

The provision of the statute applicable to the question here presented is in the following words:

"Sec. 293. In every action for the recovery of money only or specific real property, the jury in their discretion may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict in writing upon all or any of the issues; and in all cases may instruct them if they render a general verdict to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon."

We are cited to no case by counsel on either side exactly in point, nor have I, in the limited time at my command, been able to find one. Indeed I doubt that any case can

be found where a court, having directed special findings on a number of propositions by a jury, has accepted a general verdict at their hands without a response to all of them, much less where they have left a majority of such propositions unresponded to.

A trial court should be careful not to submit trivial or irrelevant propositions for the findings of a jury. Such as it does submit become a part of the record, which both court and jury are bound to respect as such, not to be ignored by the one or waived or withdrawn by the other, certainly not without the consent of the parties to the suit.

It is not to be inferred from the above that the propositions submitted in the case at bar are considered either frivolous or irrelevant. On the contrary, I think their submission was altogether proper and called for by the state of the testimony, and that their answer was necessary to a proper solution of the case.

There is another important question presented in the case, but having reached the conclusion, upon the point above considered, that there must be a new trial, such other question will not be examined.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law. By the court,

JUDGMENT REVERSED.