HENRY N. TOWN v. MISSOURI PACIFIC RAILWAY COMPANY.

FILED MARCH 3, 1897. No. 7054.

1. **Water-Courses: SIZE OF STREAM.** To constitute a water-course the size of the stream is not material. It must, however, be a stream in fact, as distinguished from mere surface drainage occasioned by freshets or other extraordinary causes, but the flow of water need not be continuous. *Pyle v. Richards,* 17 Neb., 180, approved and followed.

2. Surface Water: RIGHTS OF LAND OWNER. The doctrine of the common law in regard to surface waters is as a general rule in force and controls in this state. Surface waters may be controlled by the owner of the land on which they fall or originate or over which they flow. He may appropriate to his own use all that falls or comes on his land and refuse to receive any that falls or originates or flows on or over adjoining property.

3. ———: ———. The right under the general rule to control surface waters must be so exercised by any person as not to unnecessarily or negligently cause injury to the rights and property of others.

4. ———: ———: EMBANKMENTS. Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a watercourse; and though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters.

5. ———: ———: ———: NEGLIGENCE. Whether such embankment has been negligently constructed with reference to the obstruction of the flow of the surface waters, and whether such negligence, if any, is the proximate cause of an alleged injury, are generally questions to be submitted to the jury.

6. ———: OBSTRUCTION: NEGLIGENCE. *Held,* That a finding that the damages in this case were not the result of negligence on the part of defendant was sustained by the evidence.

7. Instructions: ASSIGNMENTS OF ERROR. If instructions are grouped in an assignment of error the determination that the action of the trial court, the subject of complaint, was proper as to one of such instructions suffices to dispose of the entire assignment.

8. Special Findings: FAILURE TO REQUEST: REVIEW. Where a jury is directed to find upon particular questions of fact, if any further than those submitted are desired by a party to the action, a request must be made for the submission of the further questions. If no request is made, error cannot be predicated upon the failure of the court to include such questions in the list of those directed to be answered.

9. ———: IMMATERIAL ANSWERS: GENERAL VERDICT: JUDGMENT. Where questions for special findings are submitted to a jury the answers to which would be immaterial to the issues as presented by the pleadings and evidence, and in view of the other findings of the jury, and the jury fails to answer one or more of such questions, it is not prejudicial error for the court to render a judgment over the objection of a party, on the general verdict returned.

10. Verdicts. The general and special verdicts held not inconsistent.

53

ERROR from the district court of Lancaster county. Tried below before STRODE, J.   *Affirmed.*

*Samuel J. Tuttle,* for plaintiff in error.

*A. R. Talbot, contra.*

HARRISON, J.

This is an action by the plaintiff in error, also plaintiff in the lower court, to recover of the defendant railway company the damages alleged to have been caused by the obstruction of a water-course by the careless and negligent construction and maintenance of an embankment by the railway company on its right of way and the consequent flooding of the plaintiff's premises or place of business in the city of Lincoln, and injury to the articles which he kept therein for sale.   The defendant company, in its answer, denies any negligence on its part in the particulars complained of in the petition, and alleged that the damages, if any, suffered by the plaintiff were the result of his own negligence, and further pleaded as follows: "Defendant further answering says that the drainage provided for under the road-bed and embankment complained of in plaintiff's petition was, and has been at all times, sufficient to successfully and completely drain the country and property tributary thereto, and that if any damage or injury accrued to the plaintiff's property, as set forth in his petition, it was due to unusual and unprecedented heavy rains and to surface water and by reason of the physical condition of the property and ground not owned or controlled by the defendant on the north side of said embankment and railway track, which prevented said water from escaping, and that the outlet and sewer provided for the escape of such surface water by the city of Lincoln on said north side was insufficient and out of order and practically destroyed so that the said surface water could not escape; that over which said sewer and drain and conditions and

outlet the defendant railway company had no control or authority whatever, and that the backing up of the water complained of in the plaintiff's petition was due to the carelessness and negligence of the city of Lincoln, if any, and not to the defendant company. Defendant further answering says that the embankment complained of in plaintiff's petition does not cross a natural stream or water course." A reply,—a general denial of the new matter contained in the answer,—was filed, and on trial to the court and a jury the defendant was successful and secured a verdict, on and in accordance with which judgment was subsequently rendered, and the plaintiff presents the case here for review.

It appears that on and prior to the 10th of June, and during some considerable time subsequent thereto, the plaintiff was conducting mainly what is commonly known as a "feed store" in a building on the corner of Twenty-seventh and W streets in the city of Lincoln, in which, on the said 10th of June, he had a stock or supply consisting of bran, shorts, hay, corn, oats, chopped feed, etc. He also had for sale some flour and corn meal. A body of land, the plaintiff says about a section (640 acres), one witness says a half section, and others fix it at two or three hundred acres, within the corporate limits of the city of Lincoln, including some of the improved portions of the city, and all platted or laid out in lots and blocks, etc., on a lot on which was the plaintiff's place of business, has such a surface conformation or is sloped so that, in time of rains or melting snows, any running waters caused thereby flow toward and come together in a body at a place in what witnesses called a "draw," others a "depression in the prairie," and others a "channel" or "water way," having its course near the store of plaintiff, and in, or directly across which, an embankment was made by or for the railway company, and which stopped the flowage of waters in the channel. The company made a culvert by placing at the base of the embankment, in the course which the surface waters had

apparently taken in their flow, a tile of the required
length, and of an internal diameter of twenty-four inches.
On the date stated in plaintiff's petition there was a very
heavy rainfall, and the consequent flow of the surface
waters draining from the body of land or portion of the
city we have hereinbefore indicated came in what plaint-
iff contends was their regular and natural channel or
well-defined course, and, when they reached the embank-
ment were, he asserts, by reason of the construction of
such embankment, and the lack of a proper culvert or
opening in the embankment for the waters to run in their
natural and usual direction, and pass through in suffi-
cient volume or quantity, thrown back and into the
plaintiff's store.

The jury, pursuant to directions given it before retire-
ment to consider of a verdict, made special findings of
which we desire to direct attention to the following:

"1. Was the water alleged to have been backed up and
occasioned the damage, because of the building of defend-
ant's embankment in a natural or general water-course?

"A. In freshets; yes.

"2. Was the water alleged to have caused the injury in
this case surface water caused by heavy rains?

"A. Yes.

"3. Did the depression in the land complained of have
a water-course or natural channel with banks and clearly
defined water-course?

"A. Yes.

"9. Was the water complained of by plaintiff surface
water?

"A. Yes.

"10. Was there a natural water-course crossed by the
embankment complained of?

"A. In freshets; yes."

These established that the jury believed from the evi-
dence that there was at the place where the embankment
was built a well-defined channel or course for drainage of
deposits or accumulations of rains or melting snows, of

surface waters, and none others.   There was sufficient
evidence in the record to support these findings, though
there was much testimony tending to lead to a contrary
conclusion in regard to the appearance there of any chan-
nel or other than a mere depression of the prairie, it being
of the evidence that the grass and weeds grew on the
whole surface of the ground at this particular place, and
that the land in the depression was cultivated, and grains
or grass sown or planted there.   It is contended the find-
ings of the jury fully determined that this was not the
course of a stream of water having a spring as its source,
continuous in its flow, or of any permanency, but was the
way in and through which naturally flowed streams of
water having no permanancy or regularity as to time of
flow, and dependent upon transient causes alone for
their origin or source.   It was not within the definition
of a "water-course" as defined in the opinion in the case
of *Pyle v. Richards*, 17 Neb., 180, wherein it was said: "To
constitute a water-course the size of the stream is not ma-
terial.   It must, however, be a stream in fact, as distin-
guished from mere surface drainage occasioned by fresh-
ets or other extraordinary causes, but the flow of water
need not be continuous."   In *Hoyt v. City of Hudson*, 27
Wis., 656, it was said of a water-course: "There must be
a stream usually flowing in a particular direction, though
it need not flow continually.   It may sometimes be dry.
It must flow in a definite channel, having a bed, sides or
banks, and usually discharge itself into some other stream
or body of water.   It must be something more than a
mere surface drainage over the entire face of the tract of
land, occasioned by unusual freshets or other extraordi-
nary causes.   It does not include the waters flowing in
hollows or ravines in land, which is the mere surface
water from rain or melting snow, and is discharged
through them from a higher to a lower level, but which
at other times are destitute of water."

   According to the third finding of the jury the outlet for
water drawn into question in this case, had some of the

essential distinctive attributes of a water-course, but lacked others,—among them a frequent flow of water, or a flow which had any definite, and other than an occasional, source. It was confined to drainage of surface water. The doctrine of the common law in regard to surface water is in force and prevails in this state as a general rule. Under this rule such water may be controlled by the owner of the land on which it falls or over which it flows. He may appropriate to his own use all that falls or comes on his land and refuse to receive any that falls upon or comes on his neighbor's land. "The doctrine of this court is the rule of the common law,—that surface water is a common enemy, and that an owner may defend his premises against it by dyke or embankment, and if damages result to adjoining proprietors by reason of such defense, he is not liable therefor." (*Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb., 526.) The general rule has been applied and enforced by this court in several instances,—notably in the case of *Morrissey v. Chicago, B. & Q. R. Co.,* 38 Neb., 406; also in *Bunderson v. Burlington & M. R. R. Co.,* 43 Neb., 545, in which the rule announced in *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb., 138, was followed. A modification of the general rule, or rather its application in connection with the time-honored and just maxim that each one must so use his property as not to injure the rights of another, has been recognized in the opinion in the case of *Anheuser-Busch Brewing Association v. Peterson,* 41 Neb., 897, wherein it was stated: "Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow onto the premises of the latter to his damage. But if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor." This was followed in *Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb., 526. (See,

also, *Jacobson v. Van Boening*, 48 Neb., 80.)  The flow of surface waters is governed, and certain distinctive characteristics given it, by the natural conditions of the surfaces of lands over which it takes its way.  If the land is hilly and full of sharp irregularities, the water may be forced rapidly toward a common point of final drainage, through a gorge or ravine originally formed by the action of the waters, or there may be a gradual or uniform slope from all directions of a large body of land to one place of common drainage, and a resultant, well-defined, final avenue of escape for the surface waters made by the large quantities which have from time to time run through it. This last may be said to be the condition, as ascertained and fixed by the jury in the findings, existent at the place drawn into controversy in the present case.  On the other hand, there may be a flow of diffused waters over the surface of lands, which passes across the country in such condition, and nowhere gathers in large or restricted volume, or in any stream confined within banks or in a channel.  This last may be said to be true surface drainage, as to which the general rule of law is applicable in its full force.  This flow, if deflected from its course, would be but the turning of a dispersed flow, at no point great, and not liable to cause damage.  There are and should be no exceptions to the general rule unless demanded by necessity.  In the case at bar the jury determined that the surface waters had flown from this body of land in a channel with banks and clearly-defined water-course. They had made for themselves a channel, through which, during certain months when there were heavy rains, they flowed regularly.  This channel must be said to have possessed the characteristics of a water-course, and that there was the necessity for some provision to be made at the time the embankment was built for the uninterrupted flow of the waters in the same direction and in the channel.  By making the necessary culvert or passage way under its embankment, the company could not be charged with having collected the surface waters in a body, and

thrown them in unwonted quantities upon the premises of its adjoining property owner. It would be receiving the waters as naturally collected, and allowing them to flow as had been their wont theretofore, and would be using its property with as little injury to that of others as might be, or the necessities demanded. It would thus bring itself within all the rules or fair exceptions thereto.

The facts in the case of *Lincoln & B. H. R. Co. v. Sutherland, supra,* constituted it one very similar in its leading elements to the case at bar. A summary of some of the main facts, as given in the syllabus to the opinion, is as follows: "A draw some seven miles in length crossed the premises of a farmer. The surface waters produced by rains and melting snows were wont to run into this draw from the surrounding territory and thence find their way to the Platte river. A railroad company constructed its road-bed across the premises and built an embankment, without culvert or opening over the draw." In a suit by the owner of the land against the company for damages for negligently constructing the embankment without an opening, whereby the surface waters were stopped and overflowed the land, and destroyed the crops thereon, it was held to call for the application of the rule against the railroad company, that a proprietor must so use his property as not to unnecessarily and negligently injure his neighbor, and the question of negligence was one to be determined by the jury. As we view the case at bar it was one for the application of the same rule; of necessity presented an exception to the general doctrine in regard to surface waters; and the question of the negligence of the company in the construction of its embankment was for the jury to settle. It was submitted to them, and though not the subject of a special finding, we must conclude that it was embodied as one of the conclusions on which the jury passed by its general verdict. A finding that there was no negligence shown which was the natural and proximate cause of the injury to plaintiff's property was amply supported by the evidence. We must conclude

that the verdict of the jury was sustained by the evidence, and not contrary to the rules of law applicable to the facts.

It is urged that the court erred in refusing to give certain instructions prepared and tendered on behalf of the plaintiff. The assignment in relation to this alleged error in both the motion for new trial and petition in error was in gross as to the seven instructions included. Of these, the one numbered 5 was erroneous, in that it ignored the question of negligence on the part of defendants as an element of the plaintiff's right to recover. This being determined we need not further examine the assignment.

One assignment of error is based upon the proposition that it was the duty of the trial court, in submitting special questions to the jury, to have included one to which an answer would have disclosed what the jury estimated to be the amount of the damages caused to the property of plaintiff by the waters, so that if it became necessary to render judgment on the special findings for plaintiff, as is the contention should now be done, it would be possible to do so intelligently and in full. Sections 292 and 293 of the Code of Civil Procedure, upon the subject of special verdicts, are as follows:

"Sec. 292. A special verdict is that by which the jury finds the facts only. It must present the facts as established by the evidence, and not the evidence to prove them; and they must be so presented as that nothing remains to the court but to draw from them conclusions of law.

"Sec. 293. In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases the court may direct the jury to find a special verdict, in writing, upon all or any of the issues; and in all cases may instruct them if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding thereon. The special verdict or finding must be filed with the clerk and entered on the journal."

Under these it would seem that the court may direct special findings on any one or all of the issues of fact, but, however this may be, it appears from the record that counsel for plaintiff excepted to the submission to the jury of any of the list of questions calling for special findings or verdict. If any other or different from those submitted were desired, they should have been prepared and submitted to the court by counsel, or at least there should have been a request for the submission of such further queries as were desired, and if refused, an exception noted. This not having been done, the assignment must be overruled. (*Everson v. Graves*, 26 Neb., 262; *First Nat. Bank of North Bend v. Miltonberger*, 33 Neb., 847.)

Error is also assigned of the action of the court in receiving the special verdict with one of the questions therein unanswered. Query numbered 8, was as follows:

"Was the grade of Twenty-seventh street in front of the store building of plaintiff which contained the goods said to have been damaged established prior to the building of said store by the plaintiff?

"A. Don't know."

It is urged that this was not an answer to the question, and that it was error to receive the special verdict with this answer in the form in which it appeared; and the case of *Doom v. Walker*, 15 Neb., 339, is cited in which it was held: "Where, under the provisions of section 293 of the Code of Civil Procedure, the court shall have instructed the jury that if they render a general verdict, to find upon particular questions of fact, stating the same in writing, and directing a written finding thereon, the jury shall fail to agree to a finding upon the whole or a part of such questions, but shall find a general verdict, it is error upon the part of said court,—over the objection of the defendant against whom is the said general verdict,—to receive such verdict, and judgment thereon will be reversed." (See, on the same subject, *Sandwich Enterprise Co. v. West*, 42 Neb., 722.) While the foregoing is the rule, it is also true that where a question is submitted for spe-

cial finding which is immaterial under the pleadings and evidence in the cause on trial and the jury fails to answer the question, it will furnish no ground for reversal of a judgment rendered on a general verdict returned by the jury. (*Missouri P. R. Co. v. Vandeventer,* 26 Neb., 222.) In the case at bar the question submitted which the jury did not answer was immaterial under the pleadings and evidence and in view of the findings of the jury on the other questions which it considered and answered; hence, if any error in the action of the court in the rendition of a judgment on the general verdict, over the objection of the plaintiff, it was error which was not prejudicial to his rights, from which it follows that this assignment is unavailing and must be overruled.

It is also argued that the general and special verdicts were inconsistent; that under such a condition it was error for the trial court to render judgment in accordance with the general verdict. The rule invoked is correct, but not applicable in this case. The verdicts were not inconsistent, but in harmony.

It follows from the foregoing discussion that the judgment of the district court will be

AFFIRMED.