BENJAMIN F. ALDRITT, APPELLANT, V. CHARLES FLEISCHAUER, APPELLEE.

FILED JUNE 8, 1905. No. 13,846.

1. Surface Water: DRAINAGE. An owner of land must so use his own property as not unnecessarily and negligently to injure his neighbor. Every proprietor may lawfully improve his property by doing what is reasonably necessary for this purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause surface water to flow on the premises of the latter to his damage.

2. ———: ———. An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course of drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence. *Davis v. Londgreen,* 8 Neb. 43, distinguished.

APPEAL from the district court for Fillmore county: LESLIE G. HURD, JUDGE. *Affirmed.*

*J. D. Pope,* for appellant.

*C. H. Sloan* and *F. W. Sloan, contra.*

LETTON, C.

The plaintiff brought this action to enjoin the defendant from discharging surface waters which accumulated in a

pond upon the defendant's land through a ditch onto and over the lands of the plaintiff. The defendant is the owner of the west half of the northwest quarter of a certain section of land in Fillmore county, and the plaintiff owns 160 acres south of it. Upon a portion of the defendant's land there is a depression which extends to the eastward over the land of an adjoining proprietor, named Howarth. The larger portion of this depression or basin is upon the land of Howarth, and in times of wet weather or of melting snows the basin is filled with water, which covers 35 or 40 acres to a depth of three feet or more at the deepest point, about 10 or 15 acres being on defendant's land. In dry seasons the basin is dry. There is no natural outlet, and the only way of escape for the water is by evaporation or percolation. On the land of the defendant a small natural waterway or channel takes its rise, extending in a southerly direction to the land of the plaintiff, and finding its outlet into a larger depression or waterway extending in a southeasterly direction over the plaintiff's land, and finally draining into a natural watercourse, called Turkey creek, some miles distant. This depression upon the plaintiff's land has been in cultivation for over 20 years. The defendant dug a ditch entirely upon his own land through a slight rim or rise of land between the pond and the natural waterway or "draw," as locally styled, which leads to the plaintiff's land, thereby draining the water from the pond into the natural waterway upon his own land, and thus into and across that portion of the plaintiff's cultivated land which occupies the waterway or depression before mentioned. The facts with reference to the character of the basin or pond upon the defendant's land and the manner of discharge upon the land of the plaintiff are very similar to those in the case of *Todd v. York County,* 72 Neb. 207, 66 L. R. A. 561. The only apparent distinction between the two cases as to the facts is that in the *Todd* case the ditch followed the direction of the natural drainage, and that, if the pond or basin had been filled up, the

water of the same would have followed the same course as it was made to follow by the digging of the ditch, while in the instant case the evidence fails to show with any certainty where the water would flow in such case, though the greater weight of the evidence tends to show that the lowest point on the rim was on the south side of the pond, on Howarth's land, and beyond plaintiff's east line, so that the water in such case would not reach plaintiff's land.

Under the rule in the *Todd* case, which seems to be the rule of both the civil and the common law (3 Farnham, Waters, secs. 889*a*-889*c;* also note by H. P. Farnham to *Todd v. York County,* 66 L. R. A. 561), an owner of land has the right to drain ponds or basins thereon of a temporary character by discharging the waters thereof by means of artificial channels into a natural surface water drain on his own property, and through such drain over the land of another proprietor, even though the flow in such natural drain is thereby increased over the lower estate, provided he acts in a reasonable and careful manner and without negligence, but he cannot divert the flow of the water in a different direction from the natural course of drainage. An interesting discussion as to the law in such case is to be found in the sections of Farnham on Waters above cited.

The instant case presents the question whether the owner of lands, upon which a large quantity of surface water often stands in a pond or basin, may by artificial means cut through the natural barrier which prevents it from reaching the lands of an adjoining proprietor, and drain it into a natural waterway on his own land, and thereby cast a new burden upon the adjoining estate, which the water previously could not reach. It is argued for the plaintiff that this case is identical with the facts in the case of *Davis v. Londgreen,* 8 Neb. 43, and that the rule laid down in that case applies that the owner of a natural pond or reservoir, wherein the surface water from the surrounding land accumulates, and from which it has no means of escape except by evaporation or percolation, can-

not lawfully, by means of a ditch, discharge such water upon the land of his neighbor to his injury. In that case, however, so far as appears from the report, the defendant discharged the waters of a pond by means of a ditch, not, as in this case, into a natural drainage way upon his own land, thence flowing into a larger channel of like nature on the land of the plaintiff, but directly into and over the land of Davis, so that it spread over several acres of the cultivated land and rendered it unfit for use, and so that it commenced to cut a watercourse across the same. There is a clear and marked distinction between the facts in this case and in that, and a general principle which may apply to that case cannot control this. On the other hand, the defendant contends that the rule in the *Todd* case and in the case of *Rath v. Zembleman*, 49 Neb. 351, applies.

In the state of Nebraska, whose surface consists of more or less rolling plains, the action of the elements has caused by erosion a system of natural drainage channels, locally termed "draws" or "ravines," usually beginning with a slight depression in the surface, and gradually deepening as they reach well-defined streams and watercourses, which are, as compared with those of more humid states, comparatively few in number. These "draws" form natural drainage channels for surface water, and are largely instrumental in promoting the interests of agriculture and the healthfulness and salubrity of the climate, by furnishing an unsurpassed natural drainage system, and thus quickly removing from the soil any excess of moisture therein caused by excessive rains or melting snows. These channels are usually dry, but are often deep enough with running water after storms to swim a horse. They afford almost the only means of surface drainage available to the husbandman, and his right to the use of the same, reasonably exercised, should not lightly be impaired. We have repeatedly said that the rule of this state with reference to surface waters is the rule of the common law, and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprie-

tors by reason of such defense, he is not liable therefor. But this rule is a general one, and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor. Therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if, in the execution of such enterprise, he is guilty of negligence, which is the natural and proximate cause of injury to his neighbor, he is accountable therefor.

As the water lay on Fleischauer's land it rendered useless 10 to 15 acres of it, and the odors and exhalations from the stagnant water were noxious and annoying. A few rods away upon his own land was a natural drainage channel leading in the general direction of the drainage of the immediate locality. He drained the pond by a small drain into this waterway in such manner that no excessive quantity was precipitated at one time upon his neighbor's land. It is true it rendered a portion of Aldritt's land untillable; but this was because the land lay in the channel of a natural waterway, which from time immemorial had carried the drainage of the surrounding land as far as its branches reached. A proprietor cannot shut his eyes to the natural configuration of his land. His right of ownership is not entirely separate and disconnected from the rights of adjoining proprietors, and with it the law confers rights and imposes duties from which he cannot free himself.

To the extent that surface water having an accustomed flow in a drainage channel or waterway having well-defined banks may not be stopped by the erection of an embankment across the channel, so as to divert the waters to the injury of adjoining proprietors, a modification of the broad rule laid down in the earlier cases in this state

has been adopted by this court. *Town v. Missouri P. R. Co.*, 50 Neb. 768; *Chicago, R. I. & P. R. Co. v. Shaw*, 63 Neb. 380; *Missouri P. R. Co. v. Hemingway*, 63 Neb. 610. These cases recognize the existence of the natural drainage channels which are common to the topography of this state, and apply the rule that the natural flow of surface water in the same cannot be interrupted by embankments in such manner as to divert the waters upon the lands of adjoining proprietors to their injury. Natural drainage channels exist to a greater or less extent in almost every locality. "That these drainage channels cannot be obstructed is supported by the great weight of authority. It is the rule in England, Canada, Ireland, Alabama, California, Delaware, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Virginia, Vermont and West Virginia." (Citing cases under each jurisdiction.) 3 Farnham, Waters, p. 2,600, sec. 889*d*. If these channels cannot be legally obstructed, their use as waterways is recognized, and a reasonable use of their facilities is not wrongful.

The supreme court of Minnesota in *Sheehan v. Flynn*, 59 Minn. 436, 26 L. R. A. 632, had before it a case in which the facts were almost identical with those in this case. In that case the court examines and distinguishes the prior cases in that state and holds that, under the rule that an owner must so use his own as not unnecessarily or unreasonably to injure his neighbor, it is the duty of an owner draining his own land to deposit the surface water in some natural drain, if one is reasonably accessible, and he is entitled to deposit the same in such natural drain though it is thereby conveyed upon the land of his neighbor, if it does not thereby unreasonably injure him. In that case, as in this, it fairly appeared that the manner of drainage pursued was the only way in which the proprietor could reasonably drain the depression, and that the ravine or waterway in which the ditch emptied was the only nat-

ural drain reasonably accessible. It also further appeared that the consequent injury to others was not so great as compared to the benefit to be derived from the improvement as to make it unreasonable upon that account. The statement in the *Sheehan* case, as in *Todd v. York County, supra,* that the "common enemy" doctrine applies, except as modified by the rule above stated, is criticised by Mr. Farnham in the notes to those cases in the Lawyers Reports Annotated, and also in his recent work upon Water and Water Rights, vol. 3, p. 2,598, in which valuable work there is a historical examination and resume of the English and American cases. However, it is not of so much importance to litigants to label a doctrine properly, as to apply its provisions, and whether we say that the rule in the *Todd* case and in the *Sheehan* case is a modification of the common law rule, or that it is an adoption of the civil law rule, is immaterial, so long as the court protects the legal rights of individuals.

We think therefore that, if Aldritt cultivated the natural waterway upon his land, he did it knowing the contingencies incident to its use in this manner. The natural drainage channel existing upon his own land, and running thence through Aldritt's land, was apparently the only outlet reasonably accessible to Fleischauer for the drainage of the surface water. It presented, as is said in *Town v. Missouri P. R. Co., supra,* "many of the distinctive attributes of a watercourse," and we think he was justified in using the same in a reasonable manner, even though it resulted in injury to his neighbor Aldritt.

We have so far considered the case without reference to the law enacted in 1903, which provides: "Owners of land may drain the same in the general course of natural drainage by constructing an open drain or ditch discharging the same into any natural watercourse or into any natural depression or draw whereby it will be carried into some natural watercourse, and when such drain is wholly on the owner's land he shall not be liable in damage therefor to any person or corporation." Comp. St. 1903, ch. 89, art.

III, sec. 1 (Ann. St. 5543). This enactment has been assailed as being unconstitutional for several reasons. As we have seen, this right exists independent of this statute, provided that it be exercised in a reasonable and proper manner and with due regard to the rights of lower proprietors. It is unnecessary therefore to consider the vulnerability of the statute to the attack made by the appellant upon its validity.

We recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.