JOSEPH SKOLIL ET AL., APPELLEES, v. LYDIA KOKES, APPELLANT.

37 N. W. 2d 616

Filed May 19, 1949. No. 32575.

*Davis & Vogeltanz*, for appellant.

*William F. Manasil* and *Harold A. Prince*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Joseph Skolil and Rose Skolil brought this action in the district court for Valley County against Lydia Kokes. The purpose of the action is to perpetually enjoin and restrain defendant from using drainage ditches on her land, to require defendant to fill said drainage ditches and restore her land to its former condition, and for the recovery of $500 as damages.

The trial court found generally for the plaintiff and entered its decree accordingly, awarding plaintiff, in addition to injunctive relief, the sum of $225 as damages.

Defendant filed a motion for new trial and from the overruling thereof she has appealed.

The record discloses that the appellees and appellant own adjoining farms just south of and bordering on the North Loup River in Valley County. The farms are in sections 35 and 36, Township 19 North, Range 13 West, in said county. Appellees' farm is east and downstream from that of appellant. The river at this

point flows east and south, although generally in an easterly direction.

South from the river there is a rise in these lands. However, the land seems to lie in flat areas or benches. The first bench, which borders on the river, is about 23 acres in area. About 21 acres of this is on appellees' farm and about 2 acres on that of the appellant. This area is meadowland, although partly used for pasture. After a slight rise there is a second flat area or bench of some 15 acres. This bench is mostly on appellant's farm as there are only about two acres thereof on that of appellees. After a slight rise there is a third bench. Apparently there is a fourth bench but with that we are not here concerned.

The extent of the third bench is not shown. On appellant's farm it seems to have an area of about 40 or 50 acres although estimated as high as 80. The surface drainage in this area is toward a low spot therein somewhat west of the division line between the two farms. The area of this low spot seems to be about 15 acres although estimated as high as 30. The water from this area collects in this basin and ponds there, subject only to seepage and evaporation. Before it will flow over the edge thereof the water therein must reach a depth of about 18 inches. This it has rarely, if ever, done. When it reaches that height the evidence is not too clear as to just what direction the overflow will take, although it would seem that it would be slightly east but generally north. Such overflow, if any, has established no well-defined channel or watercourse.

On June 19, 1947, appellant caused a ditch to be blasted from this low area on her farm to the second level or bench thereof and from there to the first level or bench. These ditches are on appellant's farm and about 12 to 15 feet west of the division fence. This caused the ponded waters on the third level to drain by flowing through these ditches onto appellant's two acres

on the first bench. From there it drained onto appellees' land located on this bench.

The natural drain on this first bench is toward the southeast. While there are low areas thereon it contains no natural waterway or watercourse with an outlet to the river or any other stream. As a result parts of this land became flooded and the evidence shows that at the time of the trial there was water on appellant's pasture deeper than the height of an ordinary boot. It is apparent that if the appellant is permitted to continue to drain this basin that the flooded condition will be permanent and the damage being caused thereby will continue.

We have examined the appellees' petition and find the allegations thereof sufficient to state a cause of action.

Appellant contends she had the right to do what she did. Section 31-201, R. S. 1943, provides: "Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation."

As stated in Halligan v. Elander, 147 Neb. 709, 25 N. W. 2d 13: "By virtue of section 31-201, R. S. 1943, an owner of land may, without liability in damages, drain the same in the general course of natural drainage by constructing and maintaining in a reasonable and proper manner, and wholly on his own land, an open ditch or tile drain, discharging a reasonable quantity of water therefrom into a natural watercourse upon his own land or into a natural drainway thereon, whereby such water may be carried into some natural watercourse."

In Aldritt v. Fleischauer, 74 Neb. 66, 103 N. W. 1084,

70 L. R. A. 301, we said: "* * * an owner of land has the right to drain ponds or basins thereon of a temporary character by discharging the waters thereof by means of artificial channels into a natural surface water drain on his own property, and through such drain over the land of another proprietor, even though the flow in such natural drain is thereby increased over the lower estate, provided he acts in a reasonable and careful manner and without negligence, * * *." See, also, Todd v. York County, 72 Neb. 207, 100 N. W. 299, 66 L. R. A. 561; Arthur v. Glover, 82 Neb. 528, 118 N. W. 111; Steiner v. Steiner, 97 Neb. 449, 150 N. W. 205.

Section 31-202, R. S. 1943, defines watercourse as follows: "Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse."

The difficulty with appellant's position in this regard is that the drainage of this pond on her land was not into a natural waterway or watercourse on her land but onto a piece of land the natural surface drainage of which was east and southeast onto that of appellees. It is true that part of appellees' land on this level had low areas where water sometimes collected and remained in small pools but it did not have a natural waterway or watercourse with an outlet to the river or any other stream. In fact, the evidence shows that water collecting on this land would have to be several feet deep before any of it would flow into the river. The evidence shows that at the time of the trial it lacked six inches of flowing into the river although at that time the water in appellees' pasture was so deep that appellant's witness could not wade it with ordinary boots. Prior to the construction of the ditches and draining of the water from the pond this bench had all been good meadow.

As stated in Todd v. York County, *supra*: "In Davis v. Londgreen, 8 Neb. 43, an early case in this court,

it is held that: 'The owner of a natural pond or reservoir wherein the surface water from the surrounding land accumulates, and from which it has no means of escape except by evaporation or percolation, cannot lawfully, by means of a ditch, discharge such water upon the land of his neighbor, to his injury.' It is apparent from a reading of the opinion in that case that what the court in fact decided was that the surface water on the upper estate could not be collected in an artificial channel and thrown on the land below there to remain, or to cut a channel for itself to some lower level. The principle enunciated may be considered as the accepted common law rule relating to the deflection of surface waters, and is and has been the doctrine obtaining in this state since its first announcement." The court therein went on to say: "Where there are two estates otherwise equally favorably situated by nature, and one is burdened by an accumulation of surface water in a pond or lake, it is difficult to conceive of any sound principle of justice which would permit the estate so burdened to be relieved by collecting in an artificial ditch such surplus waters, and casting them upon the land of the lower proprietor to his damage and detriment. Each proprietor takes the land as nature has formed it, and one ought not to improve his estate solely at the expense of his more fortunate neighbor."

Here applicable is the following from Yocum v. Labertew, 145 Neb. 120, 15 N. W. 2d 384: "When defendant cut the channel across the natural embankment and caused the water to flow into the basin he did not drain the water into any natural watercourse or into a natural depression or draw whereby it could be carried into a natural watercouse as provided by sections 31-301 and 31-302, Comp. St. 1929 (now sections 31-201 and 31-202, R. S. 1943). The evidence is that the water upon reaching plaintiffs' land is impounded in a natural basin from which the only means of escape is through evaporation or deep percolation, and there is no doubt that

digging the channel has been the cause of injury and damage to plaintiffs."

Appellant is draining the water from a pond on her land to a lower level on her farm. From there it flows, because of the natural surface drainage, onto her neighbor's land where it has no natural outlet or escape, except through evaporation or seepage, until it reaches a substantial depth, thus causing these lands to become and remain flooded. Under the following principles we think she had no right to do so.

What was said in Graham v. Pantel Realty Co., 114 Neb. 397, 207 N. W. 680, is, under the facts herein, controlling. Therein we said: "Certain it is that an upper proprietor cannot lawfully cut away the rim of the banks, which incloses a body of standing water on his land, and by the installation of a system of ditches, thereby discharge such water over and upon the lower lands of his neighbor to his injury. This constitutes a nuisance for which the trespasser may be enjoined. And, besides, he may be held in the same suit, to make good for such damages as he may have so unlawfully occasioned. * * * 'An owner of land upon which there is a natural accumulation of water into a swamp or lake, has no right to improve his land by draining such waters from one portion of his land through a natural barrier to another portion, whence it would escape over the lower lands of an adjoining proprietor; and the fact that the latter had the right to protect himself against such waters by diking or ditching would not cause the act to fall under the rule of damnum absque injuria.' Noyes v. Cosselman, 29 Wash. 635. See, also, Davis v. Fry, 14 Okla. 340, 69 L. R. A. 460."

And in Warner v. Berggren, 122 Neb. 86, 239 N. W. 473, where we said: "* * * the plaintiffs cannot be required, under the statute relied upon, to construct an artificial drain to care for the water discharged upon their land by such a ditch as the one constructed by the defendants."

Also, what we said in Yocum v. Labertew, *supra:* "Where water is impounded upon land by natural conditions whereby a lake is formed, the owner of such land has no lawful right to remove an impediment to its flowage and thereby cause such water to flow upon the land of another to his damage. * * * For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as a ground of affording relief."

While, as already stated, the evidence leaves a question of doubt as to whether the pond has ever been filled to overflowing and as to just where it would flow if it did so, however, if it can be said that it has and that appellees, by permitting debris to collect along their hog wire division fence, prevented the drain thereof toward the east and over his lands, such action, under the factual situation here where no natural drainway or watercourse had been formed, would be subject to the rule hereinafter set forth. It would not give appellant the right to drain her pond in the manner in which it was done.

"According to the common-law rule adopted by our court, no natural servitude exists in favor of the superior or higher land as to surface water, such as falls or accumulates by rain or the melting of snow. Therefore, the owner of the lower tenement may lawfully obstruct or hinder the flow of this water and in so doing hold it back or turn it off of his own land without liability therefor." Muhleisen v. Krueger, 120 Neb. 380, 232 N. W. 735.

"The rule in this jurisdiction is that a proprietor may defend himself against the encroachments of surface water by embankment or dike or otherwise and will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own land himself exercised ordinary care and provided he so uses his own property as not to unnecessarily and negligently injure another."

Robinson v. Central Neb. Public Power & Irrigation District, 146 Neb. 534, 20 N. W. 2d 509. See, also, Churchill v. Beethe, 48 Neb. 87, 66 N. W. 992, 35 L. R. A. 442; Town v. Missouri P. Ry. Co., 50 Neb. 768, 70 N. W. 402; Todd v. York County, *supra;* Aldritt v. Fleischauer, *supra.*

As to the damages which appellees claimed they suffered because of this flooding of their land they alleged in their petition that this water, so diverted by appellant onto their hay ground, had covered 15 acres thereof and resulted in the killing of grasses thereon. The evidence establishes that the 21 acres of appellees' farm, which is on this first level, is meadow; that it has a good topsoil; that prior to being flooded it was good clean meadow; that 6 acres thereof was being used as pasture; that prior to the construction of these ditches on June 19, 1947, any seeped condition thereon never lasted over a few days; that since the construction of these ditches water stands on parts or all of 13 acres thereof; that this water has or is destroying the grasses growing thereon; and that the flooded lands have been damaged as a result thereof. We find the evidence supports the damages claimed and allowed.

Appellant further claims that the appellees did not segregate or allocate the damages to them resulting from the diverted waters and that from other causes. See Seibold v. Whipple, 143 Neb. 167, 9 N. W. 2d 154, and Faught v. Platte Valley Public Power & Irri. District, 147 Neb. 1032, 25 N. W. 2d 889. In this respect she refers to a flood on June 21, 1947, just two days after the ditches were dug; possible seepage from an irrigation ditch and laterals; and subsequent heavy rainfall. The evidence establishes that the damage resulted from the continuous flooding of these lands, which condition did not exist prior to the draining of the waters from this pond. The flood was only temporary, being of one day duration, and the silting therefrom is not the damage here complained of. The possible seepage from the irrigation ditch and

laterals is too speculative. We do not think the evidence establishes any extraordinary condition as to rainfall but, even if that were true, it would only add to the water coming out of the pond and onto the meadow. We think the appellees established that their damages occurred because of the waters for which the appellant is liable.

The rule is stated in Faught v. Dawson County Irrigation Co., 146 Neb. 274, 19 N. W. 2d 358: "Where a substantial amount of water from another source or sources has been added to the water for which defendant is liable, and the combined waters have caused the damage, then it is incumbent upon the plaintiff to establish either that his damages would have occurred from the waters for which defendant is liable, or to establish the amount of his damage that had been caused by the waters for which defendant is liable." See, also, Faught v. Platte Valley Public Power & Irrigation District, *supra*.

Appellant complains that the court's decree is not clear as to just what is required of her to comply therewith. We have clarified that in the first two paragraphs of this opinion. We do not hold that appellant cannot drain her lands, if done in a lawful manner, but only that she cannot lawfully do it in the manner in which it was done.

Having come to the conclusion that the trial court was correct in its holdings we therefore affirm its decree entered herein.

AFFIRMED.

YEAGER, J., participating on briefs.