JOHN J. RUDOLF ET AL., APPELLEES, v. J. M. ATKINSON, FIRST REAL NAME UNKNOWN, APPELLANT.

58 N. W. 2d 216

Filed April 24, 1953. No. 33242.

*Hugh Stuart,* for appellant.

*Cook & Ross,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

John J. Rudolf and Alice L. Rudolf, husband and wife, brought this action in the district court for Dawson County against J. M. Atkinson. The purpose of the action is to compel the defendant to fill a ditch that he has constructed on his land; to permanently enjoin him from constructing or maintaining a ditch or doing anything else on his land that will cause the water from a large pond located thereon to drain onto plaintiffs' land; and to recover for damages which their crops and land have suffered as a result of this ditch flowing the water from this pond thereon. The trial court permanently enjoined defendant from maintaining the ditch he had constructed on his land and ordered him to fill it. It also awarded plaintiffs a judgment for damages in the amount of $7.50. After his motion for new trial had been overruled, the defendant perfected this appeal.

Based on the facts adduced and the law applicable thereto appellant contends the trial court was in error in holding as it did.

Appellees are the owners and in possession of the southeast quarter of Section 32, Township 9 North, Range 19 West of the 6th P. M., in Dawson County, Nebraska, having purchased the same in January 1949, and moved thereon shortly thereafter. Appellant is the owner of the southwest quarter of the same section, having purchased it and moved thereon in March 1950.

These lands lie in the valley of the Platte River, which is located about three-quarters of a mile south of the south side of appellees' land. The general drainage in this area is toward the southeast. Located on the quarter section just south of appellees' land is the Elm Creek irrigation ditch. This irrigation ditch runs across this quarter from the southwest to the northeast, being only a short distance from the southeast corner of appellees' land as it passes that point. There is a county road along the south edge of Section 32, which will hereinafter be referred to as the road. The buildings on appellees' land are located near the south edge and at a point just west of the center thereof. There is a schoolhouse located on appellant's land. It is near the south edge thereof at a point about 1,000 feet west of the southeast corner.

There is a low area located in the southeast part of appellees' land which we will refer to as a lagoon. The lagoon is situated in a pasture. Surface waters falling on the land in this immediate area drain into this lagoon, although the extent of the area which it drains is not shown. When sufficient surface waters have collected in this lagoon to cause it to overflow it drains into the road ditch running along the north side of the road and from there into and through a 2-foot steel tube culvert under the road. This culvert is located at a point somewhere between 100 and 200 yards west of the southeast corner of appellees' land. After this overflow water passes through the culvert it flows toward the south for a distance of about 100 yards in a shallow swale or slight depression until it reaches the Elm Creek irrigation ditch, which we will herein refer to as the ditch. When this ditch was rebuilt in 1926 there was placed thereunder at this point an 18-inch tube to carry the water. This 18-inch tube apparently became clogged or plugged and was replaced in 1950 with a 24-inch tube. The latter was so placed that the water has to rise to a considerable height before it can flow into and through

it. When the overflow water that reached the ditch resulted from an average rain the 18-inch tube would ordinarily carry it but if it resulted from a heavy or excessive rain it would not, the result being that it would cause this overflow to back up onto appellees' pasture located in the southeast part of their land, this underpass being the only outlet for this water. After the water passed under the ditch it drained to the east into a wet or swampy area referred to as a slough or swale. Just what eventually happened to the water or where it flowed to is not shown as the evidence does not show that it ever reached the Platte River or any other stream. Ted Mattson, who has, since 1939, owned and lived on the quarter section just south of appellees' land constructed a ditch on his land south from the point where this water flows under the ditch to the Platte River. This ditch now apparently carries all the water flowing under the Elm Creek ditch. Just when this latter ditch was constructed is not shown but it was apparently done in recent years.

There is another low area located in the southwest part of appellees' land, which we will refer to as a slough. This slough covered an area of about 4.5 acres although water did not stand therein at all times. The upper or northwest corner of this slough extends over onto appellant's land. This slough normally receives the surface water draining from somewhere between 30 and 60 acres of appellees' and appellant's lands. The area draining into the slough is in the form of an elongated horseshoe, being surrounded by a ridge of higher ground. This ridge extends in a north-northwest direction from a point in the road just west of appellees' farm buildings to a point on appellees' land somewhat north of the slough, then generally to the west onto appellant's land until it reaches a point some 400 to 500 feet west from the east edge thereof, then it runs south-southwest to a point just east of the schoolhouse. The amount of water in the slough varies but when suf-

ficient has collected therein from rains or other sources it overflows in a slight depression or swale toward the road. The slough overflows when the water therein gets about a foot deep. Some 50 years ago the road had not been graded and then, when the slough filled up and overflowed, it would run across the road and onto the land immediately to the south. Its flow across this land was toward the south and southeast until it flowed into an irrigation canal. This canal was situated in about the same location as the present ditch. The water draining across this land flowed in a slight depression or swale. Later, when the road was graded, a culvert was put in and the water thereafter flowed through this culvert instead of over the road. The date when this culvert was put in is not shown. In either the fall of 1931 or the spring of 1932 this road was again graded and at that time the culvert was either taken out or covered up. To take care of any overflow water coming from this slough Ray Hughey, then owner of this land, cleaned out and deepened the ditch running along the north side of the road. He did so with permission of the county commissioners of Dawson County. After this ditch was deepened the water overflowing from the slough would then flow east therein until it reached the culvert in the road, which culvert has already been referred to. After it reached this point the water would then either flow under the culvert and under the ditch or back up onto the pasture in the southeast part of appellees' land, depending upon whether or not the flow was more than the underpass could carry.

There is located near the south center of the north half of appellant's land a large shallow pond in which surface waters collect from a considerable area to the west and northwest thereof, although the extent of the area draining into this pond is not shown. This pond had no natural outlet but, when filled to a certain point, it would overflow. It would first overflow to the south

and west into a natural watercourse which flows across the southwest part of appellant's land. This watercourse flows in a southeasterly direction passing under a bridge located at a point in the road some 500 feet west of the schoolhouse. A former owner of this land had sought to drain the pond into this watercourse by constructing a ditch but, because the bottom of this watercourse is higher than the bottom of the pond, was not able to do so, although considerable of the water collecting in the pond would drain out in this manner. The water collecting in the pond, after reaching a certain height, would also overflow to the north and east into a natural watercourse running from northwest to southeast across the northeast quarter of Section 32. Appellant, in the spring of 1950, attempted to drain the pond into this watercourse but, because the bottom of the pond was lower than the bottom of this watercourse, was not able to do so. When the rain is heavy enough, as it was in 1947 and 1949, the overflow from the pond will go in both of these directions and also over the ridge to the southeast. When it does so the water flowing over this ridge empties into the slough.

On July 1, 1950, appellant cut a ditch about 600 feet long, 2 to 3 feet deep, and 2 feet wide across the ridge which normally prevented the waters collecting in the pond from flowing into the slough. The east end of this ditch is about 200 feet from the east edge of appellant's land. The water flowing through this ditch empties out onto appellant's land and then flows into the slough where it extends onto his land. Since the bottom of the slough is lower than the bottom of the pond this ditch completely drains the pond. Appellant placed a 24-inch steel tube, with a control gate, in this ditch. This culvert was placed in the ditch to enable appellant to cross it with an irrigation canal.

The result of opening this ditch was to permit a flow of all the water collecting in the pond into the slough. This would cause the slough to overflow and result in the

overflow draining into the road ditch and backing up onto the southeast part of appellees' land as the water coming down the ditch would be more than the underpass under the ditch could carry. To prevent this flooding of the pasture on the southeast part of their land appellees, with permission of the county commissioners of Dawson County, put a plug in the road ditch at a point just west of their farm buildings. It is located where the high ground or ridge comes down to meet the road. This confined the water flowing into the slough to the southwest part of appellees' land and forced it to seek an outlet to the south. At about the time appellant put in this ditch he also put in a 24-inch steel tube under the road just east of the southwest corner of appellees' land at a point where it would empty into the ditch located along the east side of Mattson's private driveway. This private driveway is located on the extreme west side of his land. This culvert is placed at a point where the ground is higher than that of appellees' land and, as a result, the overflow does not pass on south through this culvert until there has been a considerable backing up of water on appellees' land. The water did back up thereon until it covered about 14 acres. After all that would do so had drained through this culvert there was still water standing on about 10 acres. As of September 5, 1950, this water still covered about 7.7 acres or 3.2 acres more than the normal area covered by the slough. The balance had evaporated or seeped away. It is this condition that appellees seek to have corrected.

"An owner of land has the right in the interest of good husbandry to drain ponds or basins thereon of a temporary character, and which have no natural outlet or course of flow, by discharging the waters thereof by means of an artificial channel into a natural surface-water drain on his own property, and through such drain over the land of another proprietor in the general course

of drainage in that locality, even though the flow in such natural drain is thereby increased over the lower estate, and provided that this is done in a reasonable and careful manner and without negligence." Pospisil v. Jessen, 153 Neb. 346, 44 N. W. 2d 600. See, also, Aldritt v. Fleischauer, 74 Neb. 66, 103 N. W. 1084, 70 L. R. A. 301; Arthur v. Glover, 82 Neb. 528, 118 N. W. 111; Skolil v. Kokes, 151 Neb. 392, 37 N. W. 2d 616.

"By virtue of section 31-201, R. S. 1943, an owner of land may, without liability in damages, drain the same in the general course of natural drainage by constructing and maintaining in a reasonable and proper manner, and wholly on his own land, an open ditch or tile drain, discharging a reasonable quantity of water therefrom into a natural watercourse upon his own land or into a natural drainway thereon, whereby such water may be carried into some natural watercourse." Skolil v. Kokes, supra. See, also, Halligan v. Elander, 147 Neb. 709, 25 N. W. 2d 13.

"Where water is impounded upon land by natural conditions whereby a pond is formed, the owner of such land has no lawful right to remove an impediment to its flowage and thereby cause such water to flow upon the land of another to his damage." Skolil v. Kokes, supra.

Applying these principles to the facts of this case, which we have fully set forth, we find appellant did not have the right to do what he did and the court was correct in so finding and then entering the order that it did. As stated in Skolil v. Kokes, supra: "For such an injury injunction is the proper remedy, and equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief."

The small amount allowed for damages is fully supported by the evidence adduced relating thereto.

For the reasons stated we affirm the order and judgment of the trial court.

AFFIRMED.