DAROLD E. BUSSELL ET AL., APPELLANTS, V. CLIFTON McCLELLAN ET AL., APPELLEES.

54 N. W. 2d 81

Filed June 20, 1952. No. 33142.

*P. J. Barrett,* and *Blackledge & Sidner,* for appellants.

*Kirkpatrick & Dougherty,* and *Davis & Vogeltanz,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by Darold E. Bussell and Esther M. Bussell, plaintiffs and appellants, to enjoin Clifton McClelland, Merrill McClelland, Arnold Malottke, Wilber Fuss, Dean Fuss, Rose Fuss, and John Doe, operator of a dragline, real name unknown, defendants and appellees, from the construction of ditches which drain certain lands onto the lands of plaintiffs to their injury and damage. Issues were joined and a trial was had to the court at the conclusion of which a decree was entered denying the relief prayed for in the petition of plaintiffs. From this decree plaintiffs have appealed.

The true name of the party designated as John Doe was found to be Claussen, Olson & Benner, Inc., and as such it is designated in the decree. This party owned

no land involved. It was the owner of a dragline and was employed by the other defendants or some of them to construct the ditches of which plaintiffs complain. The true name of the defendants designated as McClelland was found to be McClellan and they will be hereinafter so referred to. The defendants other than Claussen, Olson & Benner, Inc., were landowners charged by plaintiffs with a joint purpose to construct ditches and collect waters with the end that they would be caused to flow upon plaintiffs' land to their damage.

The plaintiffs are the owners of land in Sections 5 and 6 in Township 17 North, Range 12 West of the 6th P. M., in Greeley County, Nebraska. This land is bounded on the east by the North Loup River. The northern boundary is of no importance in this case. On the west it is bounded by lands of the defendant Malottke. The Malottke lands extend west and northwest from plaintiffs' west line. The west line of the Malottke land is a county line road between Greeley and Valley Counties. To the west of the Malottke land is land belonging to the defendants McClellan. The north line of this land is an extension westward of the north line of the Malottke land. The land below the south line of the western part of plaintiffs' land and the land immediately to the south of this line extended westward to the county line road mentioned is owned by the defendants Fuss.

A completely accurate description of the lands involved herein cannot be given since no such description is found in the record.

Paralleling each other and extending from about the northwest corner of plaintiffs' land diagonally to the southeast are a track of the Union Pacific Railroad and a state highway. The highway is to the west of the railroad. There is a constructed outlet for flow of water under these. This outlet is on plaintiffs' land a considerable distance north of the south line. Water flows from this point in a meandering course eastward into the North Loup River.

The natural flow of surface water is from the McClellan land south and east onto the Malottke land and the natural flow from the Malottke land is south and east to the approximate south side thereof and thence east onto the plaintiffs' land. The natural flow from a part of the Fuss land is north and east to the approximate north line where it joins the water on the Malottke land and flows thence east onto plaintiffs' land.

It is undisputed that up to the time the waters reach a point very close to the east line of the Malottke land they are completely diffused surface waters and at no point or points do they follow a fixed line of flow, draw, depression, or any kind or nature of channel.

To expedite the flow of these surface waters with a common purpose and in furtherance thereof the defendant landowners caused a ditch to be constructed starting about 300 feet west of and extending eastward to the county line road. This ditch is parallel with and at about the south line of the McClellan land. They also caused to be constructed east of the highway a ditch extending from the east side of the road to a point about 300 feet west of the southwest corner of plaintiffs' land. The dimensions of the channel are not definite. There is testimony that its depth is as much as 5 feet, its width at the base 18 feet, and its bank width about 66 feet. Extension further eastward was stopped by restraining order issued out of the district court. The purpose of the defendants was not to stop at this point but to continue eastward to a point on the Malottke land near the line between it and plaintiffs' land where they contend there is a depression or draw which extends on and over plaintiffs' land eventually leading into the North Loup River. The purpose of the ditches was to collect the surface water from the land of the defendants therein and to facilitate the flow thereof into this claimed draw or depression starting on Malottke's land and extending over plaintiffs' land to the river.

The defendants contend that they have a right so to

do under the terms of sections 31-201 and 31-202, R. S. 1943. These sections of the statute are as follows:

"Owners of land may drain the same in the general course of natural drainage by constructing an open ditch or tile drain, discharging the water therefrom into any natural watercourse or into any natural depression or draw, whereby such water may be carried into some natural watercourse; and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation." § 31-201, R. S. 1943.

"Any depression or draw two feet below the surrounding lands and having a continuous outlet to a stream of water, or river or brook shall be deemed a watercourse." § 31-202, R. S. 1943.

It is to be observed that in these provisions a watercourse is defined, but a depression or draw is not. If the point of the contemplated ending of the ditch on the Malottke land would not provide an opening into a watercourse as defined by statute, or a depression or draw properly defined, it follows of course that the construction of the ditch to the damage of plaintiffs would be unlawful.

Whether or not however the contemplated eastern end of this ditch on the Malottke land would empty into a watercourse as defined or a depression or draw which is not defined is not a matter for first consideration herein on the issues made by the pleadings and tried by the district court.

The petition pleaded a combined and concerted purpose of all of the landowner defendants to cause the surface water from all of their lands in the watershed to be collected on the McClellan and Malottke lands and to be carried in concentration in increased volume and force onto and over plaintiffs' lands. The defendants by their answer and by their evidence responded to this charge against them and asserted the right to pursue the alleged combined and concerted purpose. There is

no pleading the effect of which was to say that Malottke had the right alone thus to ditch and drain his land individually.

The defendants presented their defense on the assumption that Malottke did have that right, and with that assumption as a basis proceeded on the theory that all landowners back of the Malottke land and within the watershed had the right to have their surface water collected in ditches and carried onto and over the Malottke land and thence onto and over the plaintiffs' land through what they contended was a watercourse thereon but which the district court found was not a watercourse but a depression or draw leading to a watercourse.

The question for first consideration therefore is that of whether or not, assuming that Malottke had authority under the statute and the conditions existing to construct the ditch on his own land, the landowners back of him in the watershed had the right under the statute to have accumulated and concentrated with his their surface water and to have it all in accumulation and concentration carried onto and over plaintiffs' lands to plaintiffs' damage.

The last clause of section 31-201, R. S. 1943, appears to be a full and complete answer to the question. Repeating here, it is as follows: "* * * and when such drain or ditch is wholly on the owner's land, he shall not be liable in damages therefor to any person or corporation."

The section clearly means as it clearly says that in order that there shall be no liability in damages for the construction of a ditch or drain such as is authorized by the statute the ditch or drain must be "wholly" on the owner's land and the water collected therein must be discharged in a natural watercourse or natural depression or draw on the owner's land.

Conclusively no water from the McClellan or Fuss lands ever did or could drain into a natural watercourse or natural depression or draw thereon. None existed. The design was to cause them to be collected in the

ditch on the McClellan land which was closed at the east end and when the ditch was filled to capacity have them spill therefrom eastward over the county line road, thence into the ditch on the Malottke land, and thence onto and over plaintiffs' land to the river.

As to whether or not this would result in damage to the land and crops of plaintiffs there is sharp conflict in the evidence. The evidence of the defendants in this respect is largely conjectural and speculative. The evidence of plaintiffs is also in part conjectural and speculative, however some of it is definitive of results which have already flowed from the incompleted project.

Considered de novo (§ 25-1925, R. R. S. 1943; Byram v. Thompson, 154 Neb. 756, 49 N. W. 2d 628) as must be true in this equity case we are convinced that this project in its incompleted condition has already caused and if it is completed will cause the flow of water to be concentrated and increased onto and over the lands of plaintiffs to the damage of the lands and crops thereon.

In this light and in the light of a lack of statutory authority which is the only authority advanced by the defendants as a basis for their project it follows that the rights of the parties are determinable under the established general rules relating to the collection of surface waters and the discharge thereof on the lands of a lower proprietor.

This court, in Hengelfelt v. Ehrmann, 141 Neb. 322, 3 N. W. 2d 576, recognized the common law rule that surface water is a common enemy and that a proprietor of real estate may fight it as he deems best, but an exception as follows was pointed out: "* * * that in fighting surface water the upper proprietor may not accumulate surface waters into a ditch, or drain, and thereby increase the flow, and discharge them in volume on the servient estate, and cannot divert them so they go in a different direction."

In Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129,

it was said: "A proprietor may not collect surface waters on his estate into a ditch or drain and discharge them in a volume on the lands of his neighbor, nor can he divert them so they go in a direction different from the natural flow."

It was also said: "Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors." This latter quotation was repeated in McGill v. Card-Adams Co., 154 Neb. 332, 47 N. W. 2d 912.

In Courter v. Maloley, 152 Neb. 476, 41 N. W. 2d 732, it was said: "Water which appears upon the surface of the ground in a diffused state with no permanent source of supply or regular course is regarded as surface water."

It was also said: "In this jurisdiction it is a general rule that surface waters may be controlled by the owner of the land on which they fall, or originate, or over which they flow and he may refuse to receive any that falls, or originates, or flows on or over adjoining land. His right in this respect however must be so exercised as not to unnecessarily or negligently cause injury to the rights and property of others."

Under these rules each of the landowners in the watershed above the lands of plaintiffs had a right in his turn to exercise control of surface waters on and in passage over his own land. However in the exercise of that control he was required to do so without negligence, without collecting it and discharging it in volume on the lower estate, and without diverting it from the course of natural flow to the damage of the lower estate. Of course what one could not legally do a group could not in concert legally do.

It may not be said with certainty in the present instance, within the meaning of law relating to rights with reference to surface water, that there was diver-

sion. It may however be said with certainty that there was a collection and discharge of water in volume on the property of plaintiffs. The acts involved were committed in disregard of the rights of plaintiffs and the duty which the defendants owed to them. The acts must be regarded as negligence within the proper definition of that term.

This court has defined negligence as the omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonable, prudent man would not do; want of that degree of care that an ordinarily prudent person would have exercised under the same circumstances. Bohmont v. Moore, 138 Neb. 784, 295 N. W. 419, 133 A. L. R. 270.

The appropriate remedy for the protection of plaintiffs against the evils of which they complain is by injunction. Schomberg v. Kuther, *supra*.

The decree is reversed and the cause remanded with directions to the district court to render a decree in favor of plaintiffs and against the defendants in conformity with the prayer of the petition.

REVERSED AND REMANDED WITH DIRECTIONS.