NORMAN A. RICENBAW, APPELLEE, V. EMIL E. KRAUS ET AL., APPELLANTS.

61 N. W. 2d 350

Filed December 11, 1953. No. 33359.

724

*Russell A. Souchek, William L. Walker* and *Earl Ludlam,* for appellants.

*McKillip, Barth & Blevens,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Seward County. It involves the appellee's, Norman A. Ricenbaw, right to maintain a dual system of drainage across appellants', Emil E. Kraus and Josephine H. Kraus, husband and wife, land.

Appellee is the owner of the northwest quarter and appellants are the owners of the northeast quarter of Section 23, Township 9, Range 1 East of the 6th P. M., in Seward County. The natural drainage of the moisture falling on the east side of appellee's land and on appellants' land is toward the east, although it is slightly toward the northeast as it crosses appellants' land. It

ultimately flows into the Blue River. Since 1901 the natural surface drain of a small area or pocket on appellee's land, consisting of about 2 acres, has been supplemented by a tile drain. This pocket is just west of the parties' line fence and about 60 rods north of appellee's south line. It collects surface water from about 50 to 60 acres of appellee's land and when it fills with water from rain or melting snows it overflows through a small swale at the parties' line fence.

In regard to the tile drain the trial court decreed: "IT IS THEREFORE, Ordered, Adjudged and Decreed that the plaintiff has an easement over the defendants' land, * * * which is an appurtenance of the plaintiff's land, * * * where the tile drain is located, with the right to maintain said tile drain, including the right to go upon the defendants' land, solely, however, as may be necessary, for the purpose of opening and restoring said tile drain to a functioning condition, and to maintain the same in a functioning condition, with the obligation on the plaintiff and his successors in title, after any work on said tile drain, to restore the surface of defendants' land to substantially the same condition as before performance of said work.

"IT IS FURTHER, Ordered, Adjudged and Decreed that the defendants are hereby enjoined from interfering with or molesting said tile drain and from interfering with the plaintiff in the restoration and maintenance of the same in a functioning condition; * * *."

In considering this appeal we apply the following principle: "It is the duty of this court in an equity case to try the issues de novo and to reach an independent decision without being influenced by the findings of the trial court except if the evidence is in irreconcilable conflict this court may consider that the trial court saw the witnesses, observed their manner of testifying, and accepted one version of the facts rather than the opposite." Keim v. Downing, *ante* p. 481, 59 N. W. 2d 602.

The evidence shows that in 1900 Oscar Knutson was

the owner of the northeast quarter. That fall A. L. Hannah bought the northwest quarter. After buying the northwest quarter Hannah obtained oral permission from Knutson to put a tile across Knutson's land in order to drain this small pocket which then existed on the land Hannah had purchased. This permission was given with the understanding that the tiling was to be done in such a manner that it would not bother Knutson in the farming of his land, that is, Hannah was to level off the ground after laying the tile and thereafter take care of it.

Hannah, who was from Illinois, moved to Nebraska in the spring of 1901. He brought with him 400 four-inch tile. These he used to drain this pocket. He started laying the tile at the low point of the pocket, which was some 100 to 110 feet west of the line fence. In laying the tile Hannah followed the natural drain, as evidenced by a small swale, onto and across Knutson's land for a distance somewhere between 160 and 250 feet. The tile were laid to where the swale ended, thus emptying the water flowing therefrom into a draw. The tile successfully drained this pocket until the spring of 1952 when appellant Emil Kraus, because of other difficulties with appellee, either plugged, or caused to be plugged, the outlet thereof which is located on his land.

As stated in Walsh v. Walsh, 156 Neb. 867, 58 N. W. 2d 337, by quoting from Atchison, T. & S. F. R. Co. v. Conlon, 62 Kan. 416, 53 L. R. A. 781: " 'Mere use under a naked license, however long continued, cannot ripen into a prescriptive right.' "

And as stated in Bone v. James, 82 Neb. 442, 118 N. W. 83: " * * * if the use of this way was commenced and continued by license or permission had from the plaintiff, then no right by prescription could be acquired, however long such use was continued."

But here, after obtaining from Knutson the oral license or permit to use his land to drain this pocket, Hannah went to the trouble and expense of actually putting

in the tile. As stated in Fitzsimmons v. Gilmore, 134 Neb. 200, 278 N. W. 262: " 'It is an ancient and well-settled doctrine of the common law that a mere license, whether by deed or by parol, is revocable at pleasure.' 17 R. C. L. 576, sec. 89. But, to this rule there always has been two recognized exceptions, viz: Where the license is executed, and where by reason of the expenditures by the licensee on the strength of the license, it would otherwise be inequitable to permit the licensor to effect a revocation. 17 R. C. L. 576, sec. 89." See, also, Arterburn v. Beard, 86 Neb. 733, 126 N. W. 379; Magnuson v. Coburn, 154 Neb. 24, 46 N. W. 2d 775.

As said in Magnuson v. Coburn, *supra,* quoting from 3 Tiffany, Real Property (3d ed.), c. 15, § 834, p. 416: " 'Accordingly, the decisions that a license cannot be revoked after the making of improvements on the faith thereof appear properly to involve merely the assertion of a rule of construction, that an oral permission to make a particular use of land, which use is such that it will be necessary or desirable to make expenditures in order to avail oneself of the permission, is to be construed as an attempt orally to grant an easement in the land, which is absolutely invalid as a grant, but operates by way of equitable estoppel in favor of the intended grantee if he subsequently makes expenditures on the assumption that he acquired an easement thereby, although, as a matter of fact, he originally acquired, by reason of the invalidity of the grant, merely a license."

We find, under the circumstances here shown, that Hannah, by reason of putting in the tile drain, obtained an irrevocable easement appurtenant to the northwest quarter.

Appellants claim they are purchasers for value without notice of their land being burdened with this tile drain and consequently take their title free from the burden thereof. The evidence shows that before buying the northeast quarter in July of 1942, appellant Emil Kraus inspected the lands but did not notice or become

aware of the tile drain thereon. He did not discover it until sometime in May of 1943 after appellants had moved onto the premises.

There is authority supporting appellants' contention but we think the rule announced in McKeon v. Brammer, 238 Iowa 1113, 29 N. W. 2d 518, 174 A. L. R. 1229, is the sounder rule. Therein it was held that an existing easement to use an underground tile line obtained by implication or by prescription is not extinguished by a subsequent sale of the servient estate to a bona fide purchaser without knowledge or actual or constructive notice. For a full discussion of the subject see McKeon v. Brammer, *supra*. As therein stated: "The grantor of the servient estate has no more right to convey the estate free from a nonapparent easement than he has to convey free from an apparent easement. In either instance he fails to convey a property right that he does not own—one that has passed to the owner of the dominant estate and runs with that land. The purchaser of the servient estate takes no greater title than his grantor had."

In regard to appellee's right to maintain this easement, since appellants will not permit him to go on their land for that purpose, the rule is:

" 'Every easement carries with it by implication the right, . . . of doing whatever is reasonably necessary for the full enjoyment of the easement itself.' 28 C. J. S., Easements, p. 754, § 76." Scheeler v. Dewerd, 256 Wis. 428, 41 N. W. 2d 635.

"The dominant owner has the right of access to make repairs and may enter upon the servient estate for this purpose. He may not, however, inflict any unnecessary injury." 17 Am. Jur., Easements, § 108, p. 1004.

And as stated in 169 A. L. R. 1147, in discussing this subject: "As a general rule, in the absence of an agreement, the owner of land subject to an easement of a nature which requires the maintenance of means for its enjoyment is not bound to keep such means in repair or

to sustain any expense in maintaining them in a proper condition. The duty and privilege of constructing an easement or of making repairs for its use or enjoyment rests upon the owner of the dominant tenement, since the easement itself is his particular property. * * * The dominant owner has the right of access to make repairs and may enter upon the servient estate for this purpose. He may not, however, inflict any unnecessary injury. 17 Am. Jur. 1003, Easements, § 108."

See, Barr v. Lamaster, 48 Neb. 114, 66 N. W. 1110, 32 L. R. A. 451.

As to the surface drain from this pocket the trial court decreed: "* * * that the defendants are hereby ordered and directed within thirty days from this date to remove the dam or dirt obstruction placed by them on the East side of the boundary fence between plaintiff's and defendants' premises and directly east of the depression on the plaintiff's land, and within the same time to otherwise grade and level their said land immediately east of said boundary fence and eastward therefrom over an area twelve feet wide extending from an east and west line drawn from a point six feet to the north, and to an east and west line drawn from a point six feet to the south of the point marked and designated 'bench mark' on Exhibit No. 30 of the evidence, * * * so that no part of said land within the area so described and between the said boundary fence and the outlet of said tile drain shall have an elevation higher than the elevation of the ground at the location of said 'bench mark' or, in the alternative, so that no part of said area of land above described, shall have an elevation more than .65 of a foot higher than the highest elevation within a circle having as its center the opening or upper end of said tile drain, and a radius of three feet; * * *.

"IT IS FURTHER Ordered, Adjudged and Decreed by the Court that defendants shall grade their said premises as herein before provided so that a part of the surface water which accumulates in the depression herein

referred to on plaintiff's premises, and which normally drained eastward over the top of defendants' land prior to the time when said tile drain became clogged, and prior to the time of the erection of the aforementioned embankment by the defendants, shall drain off the surface of defendants' land substantially as before."

The evidence shows there has always been a small swale running slightly southwest from the draw in appellants' land, where the tile drain empties, to the parties' line fence and then under it. It is through this swale that the excess or overflow water from this pocket has always drained. While normally the tile drain has taken care of the water collecting in this pocket, however, whenever it was insufficient for that purpose this swale has carried all excess. It is this swale that appellant Emil Kraus caused to be dammed at a point just east of the line fence. He thus prevented the water from flowing east therein onto his lands.

It is, of course, true that: "A proprietor may not collect surface waters on his estate into a ditch or drain and discharge them in a volume on the lands of his neighbor, nor can he divert them so they go in a direction different from the natural flow." Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129.

" 'Where water is impounded upon land by natural conditions whereby a pond is formed, the owner of such land has no lawful right to remove an impediment to its flowage and thereby cause such water to flow upon the land of another to his damage.' Skolil v. Kokes, supra (151 Neb. 392, 37 N. W. 2d 616)." Rudolf v. Atkinson, 156 Neb. 804, 58 N. W. 2d 216.

In Muhleisen v. Krueger, 120 Neb. 380, 232 N. W. 735, we quoted from Town v. Missouri P. R. Co., 50 Neb. 768, 70 N. W. 402, as follows: " 'Surface waters may have such an accustomed flow as to have formed at a certain place a channel or course, cut in the soil by the action of the water, with well-defined banks, and having many of the distinctive attributes of a water course; and

though there are no exceptions to the general rule except from necessity, this may constitute an exception, and if the flow is stopped by the erection of an embankment across and in the channel, some provision may be necessary for the allowance of the regular flow of the surface waters.' "

But here the water, whenever the pocket filled, both before and after the tile drain was put in, always drained through this swale across the northeast quarter.

As stated in Schomberg v. Kuther, *supra*: "Where surface water resulting from rain and snow flows in a well-defined course, whether it be a ditch, swale, or draw, in its primitive condition, its flow cannot be arrested or interfered with by a landowner to the injury of neighboring proprietors." See, also, Purdy v. County of Madison, 156 Neb. 212, 55 N. W. 2d 617; Bussell v. McClellan, 155 Neb. 875, 54 N. W. 2d 81.

The evidence fully supports the order of the court. While we think the low area at the fence line, as evidenced by the two surveys made by the county surveyor of Seward County, to be 8.55 and not 9.00, as it relates to his bench mark, however, since the appellee has taken no appeal from the decree of the trial court, we affirm its action in that respect.

Appellants complain of the trial judge's refusal to view the premises, request for him to do so having been made by them. This request the court did not grant because he thought the evidence was sufficient to determine the issues and that nothing could be gained thereby.

The trial court had a right to grant this request and to view the premises but such right was discretionary and this court will not reverse a judgment for refusing to do so unless it is apparent from the record that there has been an abuse of such discretion. See, § 25-1108, R. R. S. 1943; Carter v. Parsons, 136 Neb. 515, 286 N. W. 696; Birdwood Irr. Dist. v. Brodbeck, 148 Neb. 824, 29 N. W. 2d 621. No abuse of this discretion is here shown. Ap-

pellants suggest that this court view the premises. This suggestion must be of necessity be denied for we consider and review a case brought here on appeal solely on the record made in the court where the trial thereof was had.

The trial court awarded appellee damages of $156.25 for loss of about 3 acres of wheat which occurred during the year 1952. The loss of the crop resulted from appellant Emil Kraus' conduct and for which he is unquestionably liable.

In Berard v. Atchison & N. R. R. Co., 79 Neb. 830, 113 N. W. 537, we said: "The authorities are quite uniform that the rule of damage for the loss of a growing crop is the value of the crop at the time of its destruction or of the damage sustained."

"The general rule is that the measure of damages for the destruction of a growing crop is the value thereof in the condition in which it exists at the time of its destruction." Pulliam v. Miller, 108 Neb. 442, 187 N. W. 925.

" 'The general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages, such as the loss of speculative profits, will not be allowed.' 20 C. J. 764." Gledhill v. State, 123 Neb. 726, 243 N. W. 909.

In Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154, we said: "Damages based upon the value of unmatured crops are analogous to profits lost, and are governed by the same rule precluding recovery in cases of either uncertainty or remoteness. The question of whether damages based on the result of an unmatured crop are speculative must be determined by whether there is sufficient data to determine with reasonable certainty the probable value it would have had if matured." See, also, Faught v. Dawson County Irr. Co., 146 Neb. 274, 19 N. W. 2d 358; Faught v. Platte Valley Public Power & Irr. Dist., 147 Neb. 1032, 25 N. W. 2d 889.

In Hopper v. Elkhorn Valley Drainage Dist., 108 Neb.

550, 188 N. W. 239, we approved the following language of an instruction: " 'Where a growing crop is injured but not rendered entirely worthless as a direct result of the acts and omissions of the defendant, the damage to it may be measured, under these rules, by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury.' "

As stated in Pulliam v. Miller, *supra:* "In case the crop is matured the value is usually proved by showing the market value, less the necessary cost of harvesting, threshing, and transporting to market."

Appellee's evidence shows the loss of about 3 acres of wheat; that the balance of the field yielded about 40 bushels per acre; and that wheat was worth $2.25 per bushel. It does not show what would have been the reasonable expense of fitting for market that portion of the probable crop which was prevented from maturing by reason of the flooding.

It is appellee's thought, since the evidence he adduced would support a finding that if the 3 acres of wheat destroyed had matured the yield therefrom would have been about 120 bushels and worth $270 on the market, the trial court must have taken judicial notice of what would have been the fair and reasonable cost of harvesting the crop therefrom and deducted it in arriving at the sum of $156.25. We do not think it is a fact of which a court can take judicial notice as it may vary greatly under different circumstances. It is a fact which must be proved.

In the absence thereof any judgment for damages would be speculative, conjectural, and uncertain.

Complaint is made of the trial court taxing all costs to appellants. This contention is based primarily on the fact that the trial court accepted appellants' evidence as to the fence line elevation. We think the trial

court's decree was in favor of appellee and sustained his position, rather than appellants', in regard to his right to flow this water through a dual system of drainage. Under this situation the trial court did not abuse its authority as granted to it by section 25-1711, R. R. S. 1943.

However as to costs in this court we think, in view of our holding as to damages, they should be taxed to appellee. § 25-1933, R. R. S. 1943.

In view of what we have herein said, other contentions made by appellants will not be discussed as it would serve no useful purpose to do so.

We affirm the action of the trial court in all matters except its award of damages; the latter is reversed. Costs in this court are taxed to appellee.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.