OSBORNE TURNELL ET AL., APPELLANTS, V. MABEL C. MAHLIN ET AL., APPELLEES.

106 N. W. 2d 693

Filed December 23, 1960. No. 34836.

514

*Blackledge & Sidner*, for appellants.

*Tye, Worlock & Knapp*, for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in equity brought in the district

court for Buffalo County by Osborne Turnell, Ethel Turnell, Blanche Snider, and Bruno Miller, plaintiffs, against Mabel C. Mahlin, Milton Webb, and Wayne Webb, defendants. The purpose of the action was to restrain and permanently enjoin the defendants and each of them from diverting, interfering with, and obstructing the natural drainage of surface waters, and from causing the same to be diverted onto the lands of the plaintiffs; to require the defendants to refill the ditches and remove the dikes and dams so that the area here involved might be restored to its original state as provided by nature; and to recover from the defendants and each of them damages caused by the defendants' negligence in diverting surface waters onto the lands of the plaintiffs.

The defendants, by cross-petition, sought to restrain and permanently enjoin the plaintiffs and each of them from diverting, interfering with, and obstructing the natural drainage and surface waters along and across the defendants' lands; to require the plaintiffs to remove all filling, leveling, dikes, and dams constructed by the plaintiffs; to require the plaintiffs to open up and restore the natural drainage courses across their lands to their natural state; and to recover damages caused by the plaintiffs' negligence in diverting the natural drainage of surface waters so that the same ran onto the defendants' lands to the defendants' damage.

The trial court found generally for defendants and against the plaintiffs on the plaintiffs' petition; that the plaintiffs should be denied an injunction as prayed for in their petition, and denied damages; and that the defendants should be denied the relief prayed for in their cross-petition. Judgment was rendered in accordance with the findings.

The plaintiff filed a motion for new trial, or in the alternative to set aside the judgment rendered by the trial court. The trial court overruled the plaintiffs' motion mentioned above, and the plaintiffs perfected appeal to this court.

The plaintiffs assign as error that the trial court erred in dismissing the plaintiffs' petition, and erred in overruling the plaintiffs' motion for new trial, and alternative motion for a finding and decree in favor of the plaintiffs.

The trial court made a finding as follows: "This order shall not be construed as relieving parties herein from negligent or unlawful operation of their future drainage problems." The above finding does not appear in the trial court's journal entry, to which omission the plaintiffs objected, and in support of such objection offered into the record the docket notes of the trial court covering the trial and the decree, which were received in evidence.

The Revised Rules of the Supreme Court of this state, 1960, rule 8a2(4), provides: "Assignments of error relied upon for reversal and intended to be urged in the brief shall be separately numbered and paragraphed, bearing in mind that consideration of the cause will be limited to errors assigned and discussed. However, the court may, at its option, notice a plain error not assigned."

The plaintiffs failed to comply with the rule above set forth in their assignments of error relating to the sufficiency of the journal entry to fully describe the judgment rendered.

We find no merit to the plaintiffs' contention as above set forth.

Osborne Turnell and Ethel Turnell, husband and wife, are the owners of the northeast quarter of Section 32, Township 9 North, Range 17, in Buffalo County. Blanche Snider is the owner of the southwest quarter of Section 28, Township 9 North, Range 17, and Bruno Miller is the tenant farming the Snider land. Mabel C. Mahlin is the owner of the northwest quarter of Section 33, in Township 9 North, Range 17. It is alleged that Milton and Wayne Webb are the tenants in possession of the Mahlin land. The land of the Turnells is situated im-

mediately west of the land of Mabel C. Mahlin, divided by a section line, north and south graveled road. The Snider land is situated immediately to the north of the Mabel C. Mahlin land, separated by a graveled, maintained county road running east and west. Immediately north of the Turnell land is what is known as the Old-father land. This land is west of the Snider land, divided by the north-south road heretofore mentioned. The lands of the plaintiffs and defendants are cultivated, irrigated, and productive.

There is no dispute by the parties in this case. What we are concerned with on this appeal are surface waters only.

For convenience we will refer to Osborne Turnell as Turnell, and to his land as the Turnell land or plaintiffs' land; to Mabel C. Mahlin as Mahlin, and to her land as the Mahlin land or defendants' land; to Bruno Miller as Miller; to Blanche Snider as Snider, and to her land as the Snider land; and to other witnesses either by their first or last names, or to the lands owned by them as occasion requires.

Before summarizing the evidence, we set forth some well-established rules relating to this appeal.

Actions in equity, on appeal to this court, are triable de novo.

"Surface water is that which is diffused over the surface of the ground, derived from falling rains or melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to and does flow with other waters." Schomberg v. Kuther, 153 Neb. 413, 45 N. W. 2d 129. See, also, Walla v. Oak Creek Township, 167 Neb. 225, 92 N. W. 2d 542.

"Surface water is a common enemy and the proprietor may by embankment or dike or otherwise defend himself against its encroachments and will not be liable in damages which may result from the deflection and repulsion defended against, provided that the proprietor in making defense on his own land himself exercised

ordinary care, and provided he so uses his own property as not to unnecessarily and negligently injure another." County of Scotts Bluff v. Hartwig, 160 Neb. 823, 71 N. W. 2d 507.

"Where surface water flows in a well-defined course, whether the course be ditch, swale, or drain in its primitive condition, the flow cannot be arrested or interfered with to the injury of neighboring proprietors." Bussell v. McClellan, 155 Neb. 875, 54 N. W. 2d 81.

Negligence is the omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonable, prudent man would not do; the want of that degree of care that an ordinarily prudent person would have exercised under the same circumstances.

Many cases, too numerous to cite, declare that injunction is the appropriate remedy for the protection of the plaintiffs' rights in a case such as the case at bar.

Miller testified that he was a tenant farming the Snider land; that he lived right north of the Snider land; that he was 50 years of age and had lived in the area here involved all his life; and that he farmed the Mahlin land from 1929 to 1934. He further testified that the general direction of the drainage in that area is south and east; that the waters run into the Kearney Canal at the south end of the Turnell land and continue 8 or 10 miles into the Kearney Lake; that there is a high spot on the Snider land extending into the Mahlin land running generally from north to south and close to the west side of both the Snider and Mahlin lands; that this ridge is elevated above the surface of the surrounding land; that the natural flow of the surface waters across the Snider land is from the northwest to the southeast, and east of the high spot or ridge on the Snider and Mahlin lands; that the surface waters proceed across the east-west road from the Snider land onto the Mahlin land through a 16-inch culvert under the road, which

is the only culvert in that area; that the surface waters then proceed south onto the Mahlin land and into a duck pond or lagoon of approximately 15 acres in the northeast corner of the Mahlin land; that this was the course of the surface water in its primitive state; that the waters would not flow west because of the ridge running north and south on the Snider and Mahlin lands, but would run east; that this ridge is 565 feet from the northwest corner of the Mahlin land; and that there never has been any drainage by nature from the east to the west across this ridge because water will not run up hill and it would have to do that in order to get over the ridge. This witness further testified that there has been some construction work along the north side of the Mahlin land consisting of a dirt dike, the dirt being taken out of the road ditch to build up the dike and the road ditch north of the Mahlin land deepened on the east-west road, and the dirt was piled up on the bank on the Mahlin land; and that most of the dike is across the east half of the north line of the Mahlin land. He further testified that the road ditch extends clear across the north portion of the Mahlin land and has been deepened the entire distance; that, figuring from the bottom of the deepened road ditch to the top of the dike, it is higher in the low spot about 488 or 500 feet from the east side of the north line of the Mahlin land; that the dike is not as high going to the west; and that in the particular area just described, the dike is about 4 feet high, considering the depth of the road ditch, and is at its greatest height at the low part of the land. This witness further testified that he talked to Wayne Webb, the tenant on the Mahlin land, with reference to the construction, and informed him that it would back up the water on the Snider land after every rain; that before the dike was built the water would back up onto the Snider land perhaps an acre or so; and that now it would back up to the extent of 10 acres, or as far as 60 rods north and probably 10 rods or more wide, and would

be a foot or more deep. The effect of the backing up of this water onto the Snider land would be to ruin the crops and the land. He further testified that since the road ditch was deepened and the dike built on the Mahlin land, the water that would ordinarily proceed south onto the Mahlin land is turned to the west onto the Turnell land; that in all the years that this witness had known the land and watched the drainage, there had never been times, before the dike was built and the ditch deepened, that he had seen water running across the north-south road, but ever since the dike was built and the ditch deepened, he believed he had seen water running across the road onto the Turnell land about every year; and that there is a large quantity of water that reaches the Turnell land and floods it.

On cross-examination this witness testified that there is a culvert across the north-south road between the Mahlin and Turnell lands south of the intersection which water flowed through from the east to the west prior to and subsequent to the construction made on the Mahlin land; that this culvert is 973 feet south of the northwest corner of the Mahlin land; that before the road was leveled, some of the water, after it crossed the road, ran a little bit to the west and then south; that some of the water that ran across the Mahlin land on the east side of the ridge would turn to the southwest at the south end of the ridge and run southwest into the Kearney Canal; that the water taken out of the lateral or dike is used for irrigation purposes on the Mahlin land; that across the Turnell land there is very definite drainage over about halfway east and west, running south across the Turnell quarter section of land; and that Turnell has done some leveling and improving of his land along the north and east sides of it.

J. M. Halliwell testified that he lives immediately east of the Snider land and cornering the Mahlin land, has lived in that area for over 70 years, and had farmed the Mahlin land in 1915; that he has lived on the land

he now occupies for 32 years and is familiar with the course of rainwaters as they flow across his place; that the drainage across the Snider land is from the northwest to the southeast, and across the east-west road between the Snider and Mahlin lands and south to the Kearney Canal; that before the dike was built and the road ditch deepened along the north side of the Mahlin land, none of these waters would back up across the Snider land or proceed west to the Turnell land for the reason that the waters could not get over the raise on the Mahlin land; that because of the dike constructed on the Mahlin land some of the waters backed up on the Snider land and stood there for 60 hours; and that the amount of water standing on the Snider land would result in damage to the crops growing thereon and would have some effect on the soil.

On cross-examination this witness testified that at all times, on the land in that area, there were some low spots, and the drainage was not too good on such lands; that nearly every farm below the hills has been improved by irrigation which has changed a lot of things insofar as the water flowing on such land is concerned; and that there is an opening into the Kearney Canal at the south end of the Turnell land. He described the natural flow of surface water in its primitive condition on the Mahlin land as the previous witness described it.

Ernie Asay testified that he was a former highway commissioner for Buffalo County, had occupied such position for 17 years, and had been employed by the highway department of that county for 38 years. He further testified that he was familiar with the lands here involved and the location of the Kearney Canal immediately south of these lands; that he was familiar with the Mahlin land before there was any leveling of such land and before the dike was built thereon; that on the Mahlin quarter section there was a lagoon in the northeast 40 acres of such quarter section and to the west of this lagoon was reasonably high ground; that

over the years, by his observation, relating to the flow and drainage of rainwater generally in its primitive condition on the Mahlin land, the lagoon would hold a considerable amount of water but in heavy rains water would overflow to the south and into the Kearney Canal; that in 1957, immediately after a heavy rain, this witness was in the vicinity of these lands on the north-south road that goes along the east side of the Turnell land, and also along the east-west road that runs on the north side of the Mahlin land; that at that time he saw considerable water crossing the highway east to west onto the Turnell land; and that this water was coming from the south ditch of the east-west road along the north side of the Mahlin land. This witness further testified that during the many times he had seen the land prior to the construction made on the Mahlin land, he had never seen water run from the east to the west on the north side of the Mahlin land because the water could not get over the ridge on the Mahlin land; and that before the deepening of the ditch and building of the dike on the Mahlin land, to his knowledge, there had been no impounding of water north of the east-west road.

Allen A. Wright testified that he had lived in Buffalo County for 65 years and had been familiar with the lands of the various parties involved in this litigation from 1904 until 1920; that he lived on the Turnell land for 12 years and farmed it following that time for 4 years; and that he had many opportunities to observe the course of rainwaters as they drained across these lands. He substantially corroborated the testimony of the foregoing witnesses with reference to the natural drainage of waters on these lands, and also located a lagoon on the Mahlin land, as did the previous witnesses. He testified that the size of this lagoon was probably 9 or 10 acres; and that at no time, since he has known these lands, did water cross the north-south road and flood the Turnell land.

Ethel Turnell, the wife of Osborne Turnell, testified

substantially to the drainage of the surface waters in that area, with which she was familiar and acquainted all of her life, as did the previous witnesses. She further testified that since the deepening of the ditch and the building of the dike on the north side of the Mahlin land, the rainwater now floods across the north-south road from the east; and that prior to the construction work done on the Mahlin land these waters never flooded in that direction.

Osborne Turnell testified that he was 62 years of age and had known the land in that area all of his life and under all kinds of weather conditions; that he observed the pattern and flow of the rainwaters and floodwaters across these lands; that the general course of such waters across the Snider land was to the southeast, leaving that land close to the southeast corner of such land and across the east-west road into the lagoon in the northeast quarter of the Mahlin land; that the water would flow south and southeast toward the opening in the Kearney Canal; that before the road ditch was deepened on the south side of the east-west road and before the dike was built none of the rain or floodwaters would flow to the west because the land was higher, indicating, of course, the ridge on the Mahlin land; and that water would not run up hill. This witness further testified to the source of his problem, that is, as to where he received the water about which he complains, by the construction of the dike and the deepening of the ditch on the north side of the Mahlin land; that the water is concentrated on the northeast corner of his land for a distance of 688 feet south from a point 643 feet south of the extreme northeast corner of his land; that the water causing the trouble comes from the east on the north side of the Mahlin land to the northwest corner of the Turnell land and then turns south; that such waters are released from the deepened road ditch at the northwest corner of the Mahlin land and then back across the north-south road into his field for

a distance of 688 feet; that at that point the waters really pour across into his land; and that before the ditch was deepened and the dike built on the Mahlin land he never received any water from the east running across the road in a westerly direction to the area of his trouble spot.

On cross-examination this witness testified that the construction of the dike on the Mahlin land has not changed the picture in the northwest portion of the Mahlin land; that the level of the road on the east half of the Mahlin land is lower than the dike on the Mahlin land and east of the culvert the dike is higher than the road; and that the level of the dike is higher than the culvert. This witness further testified that in October 1951, he leveled the area on the east side of the natural watercourse on his land, that is, east of the private road on his land.

Harry Neal testified in behalf of the defendants. He testified that he had lived 4 miles north of Elm Creek, and in Buffalo County for 61 years; and that he is familiar with the lands involved in this litigation. He described the pattern of the flowage of rainwater as follows: That the water came off the Oldfather land at the northwest corner of the Snider land, and south to the north half of the Mahlin land and from there into a lagoon on the Mahlin land; and when the lagoon was filled with water it would flow in a southwesterly direction, making a horseshoe turn on the Turnell land and back toward the road. He was not sure where this water crossed the road, but it did flow on the west side of the road into the Kearney Canal. He further testified that there was a lagoon on the north side of the east-west road, constituting an acre or an acre and a half.

Milton Webb testified that he was not the tenant on the Mahlin land and had no agreement, either oral or written, with reference to such land; and that he exchanged work back and forth with his son Wayne who was the tenant on the Mahlin land. He further testified

that he was familiar in some degree with the pattern and flow of the surface and rainwater on and across the lands involved in this litigation; that the drainage from the northwest of the Mahlin land runs down the north-south road between the Mahlin and Turnell lands to the Kearney Canal; that when the water crosses the Oldfather land onto the Snider land, some of the water would run onto the west side of the north-south road to the Kearney Canal; that Turnell has constructed a small dike on the west side of the north-south road on his land which turns a large amount of water across the road which, it is claimed, had the effect of preventing water running through the culvert from the Mahlin land onto the Turnell land; that he farmed the Turnell land in 1941; and that at the four corners of the intersection of the Oldfather, Snider, Turnell, and Mahlin lands the water that ran down the north-south road would flood at the intersection frequently before any work was done on the Mahlin land. He further testified that the construction of the dike and the deepening of the ditch on the Mahlin land started in 1946 and was finished in 1948; that the dike is a dirt dike used as a lateral; that the height of the dike in comparison with the height of the road separating the Snider and Mahlin lands is level with the road on the east third of the Mahlin land, and west to the irrigation pump on the Mahlin land it is three-tenths of a foot higher than the road; that if the debris was kept out of the ditch on the south side of the Snider land there would be no difficulty in water backing up onto the Snider land; that if a hole was made in the dike on the Mahlin land this would cause the water to run south onto the Knobel land which is immediately south of the Mahlin land, where the water never ran before; that there was no change in the course of the water prior to and subsequent to the construction built on the Mahlin land; that the ditch running north and south on the north-south road causes the water on the south side of the

Mahlin land to run south where it connects with other water and such water then proceeds west across the Turnell land from the Mahlin land; that the Turnell land flooded from the north and northwest before the construction was made on the Mahlin land; and that he has never seen the ditches overflow since the construction was made on the Mahlin land.

On cross-examination this witness testified that he knew about the work that was to be done on the Mahlin land from Mr. Mahlin, but he was not farming the Mahlin land; and that he presumed that his son Wayne would know about it. He further testified that when you get to the west end of the Mahlin land toward the ridge, a dike is not needed because of the natural elevation, but that the ditch was deepened at that point for the purpose of causing the water to flow westward, and this had to be done to get the water over the raise; that the low spot on the Mahlin land is next to the pump house and at that point the dike is practically level with the road; that the dike was elevated some at that point; that the purpose of the dike was to stop the drainage of waters across the road onto the Mahlin land and also, by extending the ditch westward, would cause the waters to flow to the west where they had not heretofore naturally flowed; that the dike was elevated somewhat above the road; that by extending the ditch westerly and deepening it, the waters that would have gone south onto the Mahlin land went west by virtue of the ditch and the dike, and that was the object for which the dike was built and the ditch deepened; and that the result is that the waters in their original or primitive state that came south across the road onto the Mahlin land and in a southwesterly direction, instead of that those waters are now taken westerly into the road ditch on the south side of the east-west road then south along the east side of the north-south road.

Milo Faser testified that he was 73 years old, had lived in Buffalo County 58 years, and was familiar with

the land involved in this case. He further testified that before the construction on the Mahlin land he had seen the Turnell land flooded in the southeast corner thereof; that he also knew of the work that was done on the Turnell property where the water crosses the road from the Mahlin land; that there was a pretty deep swale there which Turnell filled up and leveled off so that his land could be irrigated, otherwise the water would drain off the Mahlin land to the southwest onto the Turnell land; that the low spot on the Snider land is the same as it has been since 1904; that there has always been a swale there consisting of 3 or 4 acres; and that the ditch or borrow pit on the north side of the east-west road between the Mahlin and Snider lands is filled up. This witness also testified that prior to the time work was done on the Mahlin property he had seen water flooding the southeast corner of the Turnell land.

Wayne Webb testified that he has rented the Mahlin land since 1942; that his father had not rented this land; that he is now the tenant occupying such land; that the drainage of the surface waters over the lands in that area is from the northwest part of the Oldfather land in a southeasterly direction, crossing the north-south road to the east on the Snider land and south across the east-west road; that the road ditches on both sides of the north-south road between the Turnell and Mahlin lands are small and will not carry water; and that none of the water that entered the Mahlin land from the north flowed straight south, but would drain in a southwesterly direction off of the Mahlin land and cross the north-south road onto the Turnell land. This witness further testified that the drainage on the west side of the Snider land drained into the road ditch and then through the culvert at the intersection of the north-south road and then south on such road; that the improvement work was done with the permission of the township board to use the east-west road ditch on the

north side of the Mahlin land to run the water along the road in the event it would not damage the road; that he kept the ditch on that side of the east-west road cleaned out; that the ditch on the north side of the east-west road has continued to be filled with silt after heavy rains; and that the last time he knew of any work being done in that ditch was in 1947. He further testified that the ditch on the west side of the north-south road had not been cleaned out or deepened during the past 6 or 8 years; that Turnell mowed the weeds on the west side of the north-south road along his land; that the surface waters that come down from the north follow the north-south road, which divides the Old-father and Snider lands, and go down the road following the road ditches to the south; and that he has not seen this water over the entire roadway at the intersection where the Oldfather, Snider, Turnell, and Mahlin lands come together. This witness further testified, however, that he had seen this water approximately 100 feet south of such intersection, carried by the road ditches, flood the entire road at that point; that the water carried along the north and west sides of the Mahlin land has not poured over the ditch or flooded; that he has not had to do any work in this ditch after its construction; that the condition of the road ditch and culvert on the west side of the north-south road north of the Turnell driveway, when he observed it 2 days before the trial, was plugged up at the west side, and was about the same as it had been for some time; that Turnell did some leveling in 1951, and there had been no change since that time; that there has always been a ridge on the west side of the north-south road at or near the Turnell driveway as long as he can remember; and that during the years 1955, 1957, 1958, and 1959, the years for which the plaintiffs claim damage to their lands, he never saw any flooding of the crops in this area, nor any evidence of flooding. This witness further testified that the ditch constructed on the north side

of the Mahlin land would be approximately 20 feet wide at the top; that the ditch was oval shaped; that from the level of the land it would vary in depth in places from 2 to 3 feet; and that this ditch was considerably larger than the ditch on the north side of the east-west road.

On cross-examination this witness testified that the purpose of the ditch on the north side of the Mahlin land would be to put the Mahlin land in a higher state of productivity so that it could be more effectively irrigated, and to accomplish this it was first necessary to stop the flow of the floodwaters that came from the north onto the Mahlin land; and that the reason the dike was built and the ditch deepened along the north side of the Mahlin land was so that the floodwaters, which had normally and previously crossed onto the Mahlin land, would be carried along the north side of the Mahlin land and turned west.

Fred G. Webb testified that he was 75 years of age and had been a member of the township board for 12 to 15 years; that he had seen where the water washed the gravel off the north part of the intersection on the north-south road before the construction work was done on the Mahlin land; and that the water comes off the Mahlin land exactly as it did before the construction work was done on the Mahlin land, and spills in the same place it did before such construction was begun.

The plaintiff Osborne Turnell testified in rebuttal that his land had never been flooded by waters from the north.

We have examined the evidence of all the witnesses, but deem it unnecessary to set forth any further testimony given in the instant case for the reason that the same is covered by a summary of the testimony heretofore set forth.

From an analysis of the record, it appears that the witnesses are in general agreement that surface waters entered upon the Mahlin land from the north and pro-

ceeded south into the lagoon. The dispute in the evidence is with reference to the pattern and direction of these waters after they leave the lagoon on the Mahlin land. The plaintiffs' witnesses testified that the waters, when they left the lagoon on the Mahlin land, proceeded in a southerly direction into the Kearney Canal due south of the lagoon, while the defendants' witnesses testified that the general course of the waters from the lagoon was in a southwesterly direction to the approximate southwest corner of the Mahlin land just opposite the southeast corner of the Turnell land. There is no complaint made by Turnells as to any of the waters received by them at this point.

The evidence also shows that the Turnell land is burdened by natural drainage from the northwest to the southeast across such land by means of a ditch which terminates in the southeast corner of the Turnell land. This is a burden that the Turnells are obligated to accept.

The evidence also shows that the Turnells present problem is caused by the concentration of water in the northeast corner of the Turnell land for a distance of 688 feet south from a point 643 feet south of the extreme northeast corner of the Turnell land, and that the waters causing this difficulty come from the east along the north side of the Mahlin land, and these waters are turned south and released from the deepened road ditch at the northwest corner of the Mahlin land where they flow across the north-south road onto the Turnell field; that before the road ditch was deepened and the dike constructed, Turnells' land did not receive waters from the east; that these waters flood not only the 43 acres of Turnell land, but also flood on west across the drainage ditch on such land, covering 65 or 70 acres and, as testified to by Osborne Turnell, at shoulder depth; and that the condition that now prevails by virtue of the construction on the Mahlin land did not occur prior to such construction on the north line of the Mahlin land. There is also evidence to the effect that work has been

done on this dike and road ditch each year since 1948.

In Bussell v. McClellan, *supra,* this court said: "It may however be said with certainty that there was a collection and discharge of water in volume on the property of plaintiffs. The acts involved were committed in disregard of the rights of plaintiffs and the duty which the defendants owed to them. The acts must be regarded as negligence within the proper definition of that term."

In Town of Everett v. Teigeler, 162 Neb. 769, 77 N. W. 2d 467, which cited Bussell v. McClellan, *supra,* and Schomberg v. Kuther, *supra,* with approval, this court said: "It is not a reasonable use of one's property to construct a dike across a natural drain upon farm lands for the sole purpose of preventing the flow of unpolluted water from a neighbor's land in the natural course of drainage, where such flow had theretofore at all times been uninterrupted." See, also, Pospisil v. Jessen, 153 Neb. 346, 44 N. W. 2d 600; Schomberg v. Kuther, *supra.*

We conclude that the defendants collected surface water into the man-made ditch and by the construction of the dike in such a manner as to discharge, through the ditch, surface waters onto the lands of the Turnells and, by the defendants' acts of negligence, diverted the surface waters so that they would flow in a different direction than the natural flow.

From an examination of the evidence relating to damages alleged to have been suffered by the plaintiffs due to the negligent acts of the defendants, the general rule is that damages, to be recoverable, must be direct and certain. Contingent, remote, or speculative damages, such as the loss of speculative profits, will not be allowed. See Gledhill v. State, 123 Neb. 726, 243 N. W. 909. This rule would also relate to the loss of crops and damage to the land.

We conclude that the plaintiffs have failed in this action to prove damages that may have resulted to the crops growing on the Turnell land.

While it is true that the construction made on the Mahlin land as heretofore set forth was done by parties other than Wayne Webb, the tenant on such land, the evidence discloses that this work was done with the knowledge of Wayne Webb and for the purpose of making the Mahlin land more productive, and it is apparent that Wayne Webb and Mrs. Mahlin talked about the improvements to be made for the purpose as before stated. With reference to Milton Webb, it is apparent that he did not farm this land, nor did he have very much, if anything, to do with the construction thereon and insofar as this defendant is concerned, he should be dismissed from this case.

Insofar as the Snider land is concerned, the effect of the injunction will take care of the waters backing up on this land due to the construction on the Mahlin land.

We conclude that the prayer of the plaintiffs' petition should be granted, with the exception that no damages be allowed. We reverse the judgment of the trial court insofar as it dismissed the plaintiffs' petition, and remand the cause with directions to render judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., participating on briefs.